KITCHENS, Justice,
for the Court:
¶ 1. On February 25, 2014, James Row-sey was convicted of aggravated assault in the Circuit Court of Greene County for throwing scalding water on a fellow inmate at the South Mississippi Correctional Institution. Rowsey was sentenced to serve ten years of incarceration to run consecutively to the life sentence he already was serving for murder. Finding no error, we affirm Rowsets conviction and - sentence.
STATEMENT OF • FACTS AND PROCEDURAL HISTORY
¶ 2. On January 28, 2010, James Rowsey was imprisoned at the South Mississippi Correctional Institution in Leakesville, serving a life sentence for murder. During the course of the day, Rowsey became concerned that Fate Santee, a man who was assigned to a bed, or “rack,” near Rowsey’s and who was associated with the Crips,[1] a gang, was going to beat him up. As Santee was resting on his assigned rack, Rowsey heated up two cups of water in a microwave oven. Rowsey ¡then walked back to the racks and dumped the hot water on Santee’s head. ,
¶ 3. Santee was severely injured by the attack. He was moved from the prison’s infirmary to the burn center at River Oaks Hospital in Flowood. Santee had bums on his trachea, face, and shoulders, which required treatments that included skin grafts, a tracheotomy, and the use of a feeding tube.
¶4. On February 22, 2011, a Greene County grand jury returned an indictment against Rowsey for aggravated assault. On May 16, 2011, Rowsey appeared before the Greene County Circuit Court for arraignment. He informed the court that he could not afford an attorney. The circuit court judge appointed Brandy Hambright, the public defender for Greene County, to represent Rowsey. On May 17, 2011, Rowsey signed a waiver of his right to an arraignment.
If 5. That same day,' May 17, 2011, Row-sey sent a complaint to the Mississippi Bar, in which he protested Hambright’s recommendation that he'waive arraignment. Rowsey sent a similar letter to the *491 Mississippi Bar on May 25, 2011, in which he informed' the Bar that- “[t]here is no need for a District Attorney. My attorney and the Court are prosecutors,” .(Emphasis in original.) As a result of Rowsey’s letters to the Mississippi Bar and the Bar’s conclusion that this matter was a “communication situation between a client and an attorney,” on June 6, 2011, Hambright filed a motion to withdraw as Rowsey’s attorney.
¶ 6. On July 26, 2011, the Greene County Circuit Court granted Hambright’s motion to withdraw as counsel and appointed attorney David Futch to represent Rowsey. Although trial had been scheduled for August 8, 2011, Rowsey was not transported from prison to the courthouse. The trial court ordéred a continuance on this basis. On September 27, 2011, Rowsey’s counsel filed a motion for a continuance, averring that he had not been given discovery by the State. On November 28/ 2011, the State filed ⅛ motion for a continuance, which was granted. ' The reason the State needed this continuance is not apparent from the record. On February 21, 2012, the State requested a continuance because the prosecuting attorney had a “personal medical problem in his family.” This continuance was granted.
¶ 7. On May 15, 2012, the parties made a joint ore terms motion to reset the trial in the case, which the trial court granted. On the defendant’s motion, on June 5, 2012, the trial court ordered that Rowsey should be given a mental evaluation at the State Hospital at Whitfield, Mississippi’s mental hospital.
¶ 8. On November 19, 2012, the court ordered another continuance because the State Hospital at Whitfield had' not yet performed Rowsey’s' mental examination. Oh December 4, 2012, Rowsets defense counsel advised the circuit judge that Row-sey had not yet been scheduled for an evaluation at the State Hospital. On February 11, 2013, the trial court ordered another continuance because Rowsey still was waiting-to get a. mental examination. After the circuit court ordered that Row-sey be provided public funds for evaluation by a private doctor, Dr. Criss Lott, a psychologist, completed Rowsey’s mental examination on May 17,2013.
¶9. On June 27, 2013, Futch filed a motion-to withdraw as Rowsey’s counsel, stating that he had’ been “continually berated and harassed” by Rowsey and that Rowsey had filed a complaint against him with the Mississippi Bar. Futch asserted that “the Defendant has filed numerous motions and filings and will not follow any guidance whatsoever from the- attorney and has created such a state of conflict that the appointed attorney cannot effectively represent the best interests] of ... [Rowsey] in any manner.” Further, Futch averred that “[b]ased upon the attorney’s and the Defendant’s feelings and animosity against each other[,] ... a conflict of interest has developed that, is insurmountable.” The trial court did not rule on this motion.
¶ 10. Also, on June 28, 2013, Rowsey entered into an agreed motion for a continuance,' because Dr. Lott had not yet completed his written report about Rowsey’s mental evaluation. On August 8, 2013, Dr. Lott completed his mental evaluation report. On August 19, 2013, Rowsey’s counsel requested another continuance, saying that he had not had time to review Dr. Lott’s report. ¡ ■
¶ 11. Prior to trial, Rowsey asserted his right to a speedy trial- on multiple occasions. He’first did so in a pro se pleading filed on April 25, 2011, before he had waived his arraignment. Rowsey’s trial counsel, Futch, invoked Rowsey’s speedy trial rights in a motion for discovery filed on September 21, 2011. On February 10 *492 and 21, 2012, Rowsey filed pro se motions to dismiss the indictment against him because he had been deprived of his constitutional right to a speedy trial. The trial court never ruled on those motions. When given an opportunity to argue these motions before the trial court, Rowsey’s trial counsel asserted that “I’ve reviewed most of his motions .... I have no reasonable legal basis to argue them.”
¶ 12. Rowsey’s trial was scheduled to commence on November 12, 2013, with Futch serving as Rowsey’s court-appointed counsel. However, before voir dire examination, ten to fifteen potential jurors saw Rowsey being escorted by South Mississippi Correction Institution officers in his yellow prison jumpsuit, chains, and shackles, leading to concerns by the circuit clerk and defense counsel that the jury would be prejudiced against Rowsey. Consequently, Rowsey’s trial counsel requested a new trial on a different date, which resulted in another continuance.
¶ 13. Rowsey’s trial commenced on February 24, 2014, forty-nine months after the incident, thirty-six months after indictment, and thirty-three months after arraignment. On February 25, 2014, the jury returned a guilty verdict against Row-sey for aggravated assault against Santee. The Greene County Circuit Court sentenced Rowsey to ten years of incarceration to run consecutively to the life sentence he was serving for murder.
¶ 14. On appeal, Rowsey’s counsel, who was appointed from the Indigent Appeals Division of the Office of the State Public Defender, raises two issues:
I. Whether the trial court erred by failing to dismiss the indictment against Rowsey because he had been deprived of [his] constitutional right to a speedy trial.
II. Whether the trial court erred by failing to dismiss the indictment against Rowsey because his statutory right to a speedy trial had been violated.
¶ 15. Rowsey has filed a pro se supplemental appellant’s brief, in which he raises the following issues:
III. Whether Rowsey’s counsel was constitutionally ineffective.
IV. Whether Rowsey’s trial counsel had an actual conflict of interest, rendering him ineffective under this Court’s precedent in Kiker v. State, 55 So.3d 1060 (Miss. 2011).
V. Whether Rowsey was forced to testify at trial in violation of his constitutional rights.
VI. Whether the trial court erred in sanctioning Rowsey for filing his “Defendant’s Talleying [sic] of Some Legitimate Rules the Trial Court has Failed to Follow And Motion to Dismiss for the Violation/Error Thereof.”
VII. Whether the record on appeal is incomplete or tainted.
DISCUSSION
I. Whether the trial court erred by failing to dismiss the indictment against Rowsey because he had been deprived of constitutional right to a speedy trial.
■ ¶ 16. The right to a speedy trial is secured by the Sixth Amendment to the United States Constitution:
In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against *493 him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.
U.S. Const, amend. VI. The- Mississippi Constitution also secures the right to a speedy trial by jury:
In all criminal prosecutions the accused shall have a right to be heard by himself or counsel, or both, to demand the nature and cause of the accusation, to be confronted by the witnesses against him, to have compulsory process for obtaining witnesses in his ■ favor, and, in all prosecutions by indictment or information, a speedy and public trial by an impartial jury of the county where the offense was committed.
Miss. Const, art. 3, § 26.
¶ 17. In analyzing constitutional speedy trial claims, we apply the four-part test articulated by the United States Supreme Court in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), which balances: (1) the length of the delay, (2) the reason for the delay, (3) the defendant’s assertion of his right, and (4) the prejudice to the defendant. The Barker Court explained that each case should be considered on an “ad hoc basis” and that no one factor is outcome determinative. Id. at 530, 92 S.Ct. 2182. The Court wrote:
We regard none of the four .factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right .of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process.
Id. at 533, 92 S.Ct. 2182.
¶ 18. This Court’s standard of review for speedy trial challenges is as follows:
Review of a speedy trial claim encompasses a fact question of whether the trial delay rose from good cause. Under this Court’s standard of review, this Court.will uphold a.decision based on substantial, credible evidence. Folk v. State, 576 So.2d 1243, 1247 (Miss.1991). If no probative evidence supports the trial court’s finding of good cause, this Court will ordinarily reverse. [Id. ]
DeLoach v. State, 722 So.2d 512, 516 (Miss.1998).
¶ 19. According to our speedy trial case law, the State bears the burden of proving good cause for a speedy trial delay, and thus bears the risk of nonper-suasion. Flores v. State, 574 So.2d 1314, 1318 (Miss.1990). The burden does not rest with 'the defendant to prove that the delay was caused by the Government’s bad faith. See id.; accord Vickery v. State, 535 So.2d 1371, 1375 (Miss.1988) (“[W]here the record is silent regarding the reason for delay, as the record is silent here, the clock ticks against the State because' the State bears the risk of non-persuasion on the good cause issue.”).
¶ 20. Thus, in cases such as this, in which the defendant asserts his speedy trial right but the trial court has not held an adequate hearing on the issue, this Court has two options: (1) decide the case based on a de novo review of the record before us, if good cause for the delay is apparent, or (2) remand the case to the circuit court to allow the State to present evidence explaining the delay and to conduct a proper Barker analysis. Myers v. State, 145 So.3d 1143, 1151-52 (Miss.2014). In this case, the Court is able to determine that good cause exists in the record which explains the delay between Rowsey’s indictment and trial. Thus, it is *494 not necessary for this Court to remand this case to the trial court for a speedy trial analysis.
¶21. In two cases, Wells v. State, 160 So.3d 1136, 1146-47 (Miss.2015) and Kolberg v. State, 829 So.2d 29, 88 (Miss.2002), we held that a criminal defendant’s failure to obtain a ruling from the trial court on his or her speedy trial motion constitutes a waiver of his or her constitutional speedy trial right.[2] Wells, 160 So.3d at 1146-47 (“[I]t is the responsibility of the movant to obtain a ruling from the court on motions filed by him and failure to do so constitutes a waiver of same. This , includes speedy-trial motions.”) (internal. citations omitted); Kolberg v. State, 829 So.2d at 88 (“It is the responsibility of the movant to obtain a ruling from the court on motions filed by him and a failure to do so constitutes a waiver of the same.”) (quoting Rushing v. State, 711 So.2d 450, 456 (Miss.1998)). However, these cases are in disagreement with the. United States Supreme Court’s decision in Barker. In Barker, the United States Supreme Court held that “[w]e reject ... the rule that a defendant who fails to demand a speedy trial forever waives his right.” Barker, 407 U.S. at 529, 92 S.Ct. 2182. The Court asserted that “the better rule is that the defendant’s assertion of or failure to assert his right to a speedy trial is one’ of 'the factors to be considered in an inquiry into the deprivation of the right.” Id.
¶ 22. Wells and Kolberg not only contravene the United States Supreme Court’s holding in Barker, they also are in conflict with our own precedent. See Myers v. State, 145 So.3d at 1151. Thus, insofar as Wells and Kolberg hold that a defendant can waive his or her right to a speedy trial by failing to obtain a ruling on his or her motion for a speedy trial in the trial court, we overrule those cases.
¶23. The opinion written by Justice Pierce concurring in result only, relies on Dora v. State, 986 So.2d 917 (Miss.2008), to suggest that we should abrogate Wells and Kolberg and instead adopt a “plain error” review standard. With respect, this would not be the wisest course of action for many reasons. First, Dora addresses only “when the constitutional speedy-trial issue is raised for the first time on appeal.” Dora, 986 So.2d at 924. This is not-the situation here. Rowsey raised the issue in the trial court and the trial court did not rule on his claim. Thus, Dora is not controlling. Further, Justice Pierce’s opinion’s proposed rule serves only to prejudice" the State. It is well settled that any unexplained trial delay tolls heavily against the State, not against the defendant. Vickery, 535 So.2d at 1375. Thus, under Justice Pierce’s opinion’s “plain error review,” any ambiguities in the record must be counted heavily against’the State. However, under the Myers dichotomy, if good cause for the trial delay is apparent, we can render a decision in favor of the State on'that basis. If good cause is not apparent in the record, there is a mechanism to remand for an evidentiary hearing whereby the State has the opportunity to provide an explanation for the delay and the trial court has the freedom of an independent consideration of the Barker factors.

*495
(1) Length of the Delay

¶ 24. The constitutional right to a speedy trial attaches “at the time of a formal indictment or information , or else the actual restraints imposed by arrest and holding to a criminal charge.” Handley v. State, 574 So.2d 671, 674 (Miss.1990) (quoting Lightsey v. State, 493 So.2d 375, 378 (Miss.1986)), superseded by statute on other grounds. Rowsey was indicted on February 22, 2011. His trial began on February 24, 2014. Some 1,099 days, or thirty-six months, passed between Row-sey’s arrest and his indictment. This Court has held that a delay of eight months is presumptively prejudicial. Johnson v. State, 68 So.3d 1239, 1244 (Miss.2011). The United States Supreme Court has held that “the presumption that pretrial delay has prejudiced the accused intensifies over time.” Doggett v. United States, 505 U.S. 647, 652, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). In this case, the delay of 1,099 days, or thirty-six months, between Rowsey’s indictment and trial was presumptively prejudicial.

(2) Reason for the Delay

.¶ 25. As for Barker’s second criterion, “different weights should be assigned to different reasons [for, delay].” Delays caused intentionally by the State for the purpose of depriving a criminal defendant of his or her constitutional rights are weighed heavily against the State. Barker, 407 U.S. at 531, 92 S.Ct. 2182. Delays for good cause, for instance, a continuance for the purpose of finding a-missing witness, are weighed less heavily against the State. Id. Moreover, continuances sought on behalf of the defendant toll the speedy trial clock. Vickery, 535 So.2d at 1375.
¶26. In this case, it is clear that the lion’s share of the delay in Rowsey’s trial was attributable to Rowsey’s unwarranted harassment of his original trial counsel and the substantial amount of time it took to schedule a mental evaluation to prepare Rows'ey’s defense. In light of these considerations, the reason for the delay cannot be weighed against the State.
(S) Whether the defendant asserted his right to a speedy trial. ,.
¶ 27. Prior to trial, Rowsey frequently invoked his right to a speedy trial. He first asserted his right to a speedy trial in a pro se pleading, before he waived his arraignment, on April 25, 2011. Rowsey’s trial counsel invoked Rowsey’s speedy trial rights on September 21, 2011. Rowsey subsequently filed pro se motions to dismiss the indictment against him because he had been deprived of his constitutional right to a speedy trial on February 10, 2012, and on February 21,2012’.
¶ 28. < However, it cannot be ignored that Rowsey invoked his speedy trial rights and filed motions to dismiss the indictment against him while he simultaneously was seeking continuances to accommodate his mental evaluation. In Franklin v. State, 136 So.3d 1021 (Miss.2014), this Court held: “The right, in this case, is the right to a speedy trial. An assertion of that right is a demand for a speedy trial, which will generally be an objection to a continuance or a motion asking to go to trial. At the very least, a defendant’s assertion of his speedy trial rights should manifest ‘his desire to be tried promptly.’” Franklin, 136 So.3d at 1035 (quoting United States v. Frye, 1489 F.3d 201, 211-12 (5th Cir.2007)). Thus, it is not enough that' a defendant simply would like the indictment against him to be quashed. Instead, the invocation of the right to a speedy trial is actually a request to go to trial. See id. Here, Rowsey could not go to trial because he was waiting for the mental evaluation that he re *496 quested, which was key to preparing his trial defense. Therefore, although he invoked his right to a speedy trial, it cannot be argued that Rowsey manifested the “desire to be tried promptly.” Franklin, 136 So.3d at 1035 (quoting Frye, 489 F.3d at 212).
(⅜) Prejudice to the Defendant
f 29. The United States Supreme Court has held that unreasonable pretrial delay threatens to produce more than one sort of harm, including “oppressive pretrial incarceration,” “anxiety and concern of the accused,” and “the possibility that the [accused’s] defense will be impaired” by dimming memories and loss of exculpatory evidence. Barker, 407 U.S. at 532, 92 S.Ct. 2182. Of these forms of prejudice, “the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.” Id.
¶ 30. In this case, it was not established that Rowsey actually was prejudiced by the delay in his trial date. Because he was serving a life sentence for murder, his pretrial incarceration was not related to his aggravated assault charge. Moreover, on the witness stand, Rowsey confessed to the aggravated assault and claimed that he had acted in self defense. There is not much concern in this case regarding dimming memories or dissipating evidence. Finally, Rowsey’s counsel needed the continuances to prepare his defense. If he had received a speedier trial, Rowsey would not have had the benefit of the results of his mental examination. Stated differently, Rowsey’s defense would have suffered detriment if the delay had not occurred.
¶31. Even though 1,099 days passed between Rowsey’s indictment and trial,- a fair analysis of the Barker factors establishes that Rowsey’s constitutional right to a speedy trial was not violated.
II. Whether the trial court erred by failing to dismiss the indictment against Rowsey because his statutory right to a speedy trial had been violated.
¶ 32. In addition to their constitutional rights to a speedy trial, criminal defendants in Mississippi have a statutory right to a speedy trial. This right is contained in Section 99-17-1 of the Mississippi Code, which provides: “Unless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned.” Miss.Code Ann. § 99-17-1 (Rev.2015). Thus, unlike the constitutional right to a speedy trial which attaches at the time of arrest or indictment, Handley, 574 So.2d at 674, the statutory speedy trial right attaches at arraignment. Miss.Code Ann. § 99-17-1. Some 1,014 days elapsed between the time Rowsey waived his arraignment and his trial. However, the delay in this case was due to good cause, namely, that Rowsey was awaiting a mental examination at the State Hospital. Thus, Rowsey’s statutory right to a speedy trial has not been violated.
III. Whether Rowsey’s counsel was constitutionally ineffective.
¶ 33. In his pro se brief, Rowsey argues that both his appointed trial counsel and his appointed appellate attorney were ineffective.
¶ 34. A defendant in a criminal ease is entitled, under both the United States and Mississippi Constitutions, to effective assistance of counsel. U.S. Const. amend. VI; U.S. Const, amend. XIV; Miss. Const. art. 3, § 26; Strickland v. Washington, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 *497 L.Ed.2d 674 (1984). In Strickland v. Washington, the United States Supreme Court articulated the test for considering a constitutional claim of .ineffective .assistance of counsel. First, the court- must determine whether the-defendant received reasonably effective assistance of counsel. Strickland, 466 U.S. at 687-88, 104 S.Ct. 2052. Second, if it is determined that the defendant did not receive reasonably effective assistance of counsel, the reviewing court must determine whether this insufficiency had a “reasonable probability” of affecting the outcome of the case. Id. at 695. A “reasonable probability” means that the confidence of the court in the outcome is undermined, not a certainty that the verdict would have been different. Id.
¶ 35. Generally, ineffective-assistance claims are raised during post-conviction proceedings. Archer v. State, 986 So.2d 951, 955 (Miss.2008). However, a claim of ineffectiveness may be raised on direct appeal “if such issues are based on facts fully apparent from the record.” M.R.A.P. 22(b).
¶ 36. In order to receive relief for a claim, of ineffective assistance of counsel, Rowsey must establish that his trial counsel’s representation was deficient. First, Rowsey argues that his trial counsel, David Futch, requested and agreed to continuances during the time Rowsey was waiting for his mental evaluation and report. Rowsey argues that, in so doing, Futch infringed upon his right to a speedy trial. No evidence in the record supports that Rowsey’s counsel was deficient for this reason or any other. Thus, this claim is not appropriate for this Court’s consideration on direct appeal.
¶ 37. Rowsey further argues that Futch was deficient in advising Rowsey to testify in his own defense. In Stringer v. State, 454 So.2d 468, 477 (Miss.1984) this Court held that:
Judicial scrutiny of counsel’s perform-anee must be highly deferential, [citation omitted] -.... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action “might be considered sound trial strategy.”
Advising Rowsey to testify in his own defense clearly falls within the ambit of trial strategy.. Thus, Rowsey cannot prove that his counsel was deficient for this reason and therefore is not entitled to relief on the basis of ineffective assistance of counsel.
¶ 38. Rowsey also argues that his original appointed counsel, Brandy. Ham-bright, was ineffective because she advised him to waive, his arraignment. It is not reasonable to argue that a trial counsel’s advice to waive arraignment is per se ineffective. Moreover, even if this advice proved to be deficient in this instance, Rowsey offers no argument regarding its impact on his conviction. Thus, Rowsey’s argument regarding Hambright’s ineffectiveness is without merit.
1139. Finally, Rowsey argues that his appointed counsel ■ on appeal -was ineffective because she raised only arguments related to Rowsey’s right to a speedy trial. In Burns v. State, 813 So.2d 668, 680 (Miss.2001), this Court held that “[c]hoos-ing which issues to raise and which to omit [on appeal] is a matter of strategy which should be left to an attorney’s discretion.” Here, it is not reasonable to argue that *498 Rowsey’s counsel was ineffective in presenting only arguments related to .Row-sets speedy trial claims. This is especially true in light of the fact that none of the other claims presented by Rowsey in his pro se brief on appeal is meritorious.
IV. Whether Rowsey’s trial counsel had an actual conflict of interest, rendering him per se ineffective under this Court’s precedent in Kiker v. State, 55 So.3d 1060 (Miss.2011).
¶ 40. Further, in his pro se brief, Rowsey argues that his counsel was per se ineffective because his counsel had an actual conflict of interest.
¶ 41. In Kiker v. State, 55 So.3d 1060 (Miss.2011), this Court held that when a criminal defendant is represented by counsel with an actual conflict of interest, it is per se ineffective assistance of counsel. Kiker, 55 So.3d at 1067 (¶ 19). This Court further held that:
“In all criminal prosecutions, the accused shall enjoy the right ...'. to have Assistance of Counsel for his defence.” U.S. Const. amend. VI. See also Miss. Const. art. 3, § 26 (“In all criminal prosecutions the accused shall have a right to be heard by himself or counsel, or both_”) “[A]dept representation encompasses two broad principles: minimum competence and loyal assistance.” Armstrong v. State, 573 So.2d 1329, 1331 (Miss.1990) (citation omitted). Moreover, constitutional guarantees of due process of law require undivided loyalty of defense counsel. Littlejohn v. State, 593 So.2d 20, 23 (Miss.1992) (citing U.S. Const. amend. V); United States v. Alvarez, 580 F.2d 1251, 1256 (5th Cir.1978) (citing Porter v. United States, 298 F.2d 461, 464 (5th Cir.1962)). See also Miss. Const. art. 3, § 14 (“No person shall be deprived of life, liberty, or property except by due process of law.”).
“Under our' system of jurisprudence, if a lawyer is not one hundred percent loyal to his client, he flunks.” Littlejohn, 593 So.2d at 22. Because “[l]oyalty is an essential element in the lawyer’s relationship to a client,” the Mississippi Rules of Professional Conduct prohibit a lawyer’s representing conflicting interests without knowing and informed consent from the client(s). Miss. R. Profl Conduct 1.7 & cmt. 2. If an impermissible conflict arises after the lawyer already has undertaken representation, the lawyer should withdraw from the case. Miss. R. Profl Conduct 1.7 cmt., 1.16. “Defense counsel have an ethical obligation to avoid conflicting representations and to advise the court promptly when a conflict of interest arises during the course of trial.” Cuyler v. Sullivan, 446 U.S. 335, 346, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).
Kiker, 55 So.3d at 1065-1066 (¶¶ 13-14).
¶42. On June 27, 2013, David Futch, Rowsey’s trial counsel, filed a motion to ■withdraw as Rowsey’s counsel, stating that he had been “continually berated and harassed” by Rowsey and that Rowsey had filed a complaint against him with the Mississippi Bar. Futch asserted that “the Defendant has filed numerous motions and filings and will not follow any guidance whatsoever from the attorney and has created such a. state of conflict that the appointed attorney cannot effectively represent the best interest[s] of ... [Rowsey] in any manner.” Further, Futch averred that “[b]ased upon the attorney’s and the Defendant’s feelings . and animosity against each other[,] ... a conflict of interest has developed that is insurmountable.”
¶ 43. Kiker contemplates a situation in which counsel’s loyalty is divided because he represents both the criminal defendant and a witness for the prosecution, an arrangement forbidden by the *499 rules of professional conduct unless the criminal defendant makes an express waiver of the conflict. Id. at 1064-66. An actual conflict of- interest is not at issue here. Instead, what is evident from the record is a personality conflict between the attorney and his client, not unlike the personality conflict which existed between Rowsey and his first appointed counsel. “Counsel is presumed to be competent .... An indigent criminal defendant is not entitled to expert counsel, or to counsel of his own choosing, but only to reasonably effective assistance of counsel.” Johnson v. State, 476 So.2d 1195, 1204 (Miss.1985) (citing Strickland, 466 U.S. at 668, 104 S.Ct. 2052; Morris v. Slappy, 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983)). In this case, Rowsey’s attorney filed pretrial motions, performed an investigation into the case, filed a motion for Rowsey to receive a mental evaluation, cross-examined witnesses at trial, arid made eviden-tiary objections. The personality conflict between Rowsey and his attorney had no obvious effect on the quality of his attorney’s representation at trial.
¶ 44. Because no actual conflict was at issue in .this case, our decision in Kiker is inapplicable and Rowsey is not, entitled to relief on that basis.
V. Whether Rowsey was forced to testify at trial in violation of his constitutional rights.
¶45. Rowsey also argues in his pro se brief that his trial counsel forced him to testify in his own defense.
¶ 46. The Fifth Amendment provides: “No person ... shall be compelled in any Criminal Case to be a witness against himself.” U.S. Const, amend.' V. A similar right against self-incrimination exists in Article 3, Section 26, of the Mississippi Constitution. Miss. Const, art. 3, § 26 (“[The accused] shall not-be compelled to give -evidence against himself.”): The guarantee against testimonial compulsion, like other provisions of the Bill of Rights, “was. added to the original Constitution in the conviction that too high a price may be paid- even for the unhampered enforcement of the criminal law and that, in its.attainment, other social objects of a free society should not be sacrificed.” Feldman v. United States, 322 U.S. 487, 489, 64 S.Ct. 1082, 88 L.Ed. 1408 (1944), overruled on other grounds by Murphy v. Waterfront Comm’n of New York Harbor, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964), abrogated by United States v. Balsys, 524 U.S. 666, 118 S.Ct. 2218, 141 L.Ed.2d 575 (1998).
¶ 47. Without question, Rowsey had the right to remain silent, the' right against self-incrimination, and,- if he so chose, the right to forgo testifying in his own defense. Also without question,-the-only way Row-sey could claim the aggravated assault was committed in self defense was through his own testimony. Based on the record before us, there, is no evidence that Rowsey was forced against his will by his attorney to testify. Moreover, it is axiomatic that this Court takes.“a case on appeal as it comes to us in the record, and receive[s] no new evidence.” McGee v. State, 40 So.2d 160, 165 (Miss.1949) (quotirig Pacific R.R. Co. of Mo. v. Ketchum et al., 101 U.S. 289, 25 L.Ed. 932 (1879)). Thus, given that rio evidence in the record support his claim, Rowsey’s argument that his attorney forced him to testify against his will in violation of his Fifth Amendihent rights is without mertt,
VI. Whether the trial' court erred in sanctioning Rowsey for filing his “Defendant’s Talleying [sic] of Some-Legitimate Rules the Trial Court has Failed to Follow And Motion to Dismiss for the Violation/Error Thereof.”
¶ 48. Next; Rowsey argues that, because he was granted leave to proceed *500 in the trial court in forma, pauperis, the trial court erred in sanctioning Rowsey the amount of the cost of a filing a fee for filing his “Defendant’s Talleying [sic] of Some Legitimate Rules the Trial Court has Failed to Follow And Motion to Dismiss for the Violation/Error Thereof.”
¶49. Mississippi trial courts have the power to sanction parties for frivolous filings, including frivolous filings by pro se litigants. Ivy v. Merchant & Whaley, 666 So.2d 445, 451 (Miss.1995); Dethlefs v. Beau Maison Dev. Corp., 511 So.2d 112, 118 (Miss.1987). These sanctions “may take the form of monetary sanctions as well as appropriate restrictions on future filings. Such restrictions, however, must be appropriately tailored to redress the transgression found and to assure that valid claims will not be prohibited.” Ivy v. State, 688 So.2d 223, 224 (Miss.1997).
¶50. In considering Rowsey’s filing, also known as the “Defendant’s Talleying [sic] of Some Legitimate Rules the Trial Court has Failed to Follow And Motion to Dismiss for the Violation/Error Thereof,” the trial court held:
Mr. Rowsey’s motion is again written in wording that is disrespectful and insulting therefore pursuant to' this Court’s April 16, 2012 Order, Rowsey is hereby ordered to pay for the filing fee of this pleading.
Future pleadings by Rowsey will not be filed by the Clerk unless accompanied by a filing fee. Any future pleadings containing disrespectful and vile language will be returned to Rowsey un-filed.
In turn, in its order dated April 16, 2012, the trial court held that “[t]he nature of Mr. Rowsey’s complaint is written in wording that is disrespectful and abusive and will not be entertained by this Court. Any further pleadings containing this language will be returned to Mr. Rowsey and could possibly subject him to sanctions.” Upon review of Rowsey’s motion, we find that it was frivolous, disrespectful, and verbally abusive to the trial court.' The trial court did not abuse its discretion in assessing Rowsey the cost of a filing fee for this motion as a sanction.
VII. Whether the record on appeal is incomplete or tainted.
¶ 51. Finally, Rowsey claims that the record on appeal is incomplete, complaining that certain filings are absent from the record on appeal and that the record contains filings from other cases. However, we are limited to the record as it appears before this Court. See McGee, 40 So.2d at 165. Even if Rowsey had indicated with particularity which pages are absent .from the record, there is no way for this Court to establish their authenticity on direct appeal. Furthermore, Rowsey fails to establish that these documents would have affected the outcome of his trial or appeal.
¶ 52. It is true that there are two pages in the record that seem to correspond with another criminal defendant’s case. Even if these pages were misfiled by the Greene County Circuit Clerk, Rowsey fails to articulate a legal theory which would entitle him to relief on this basis. Because they do not relate to him, these two pages simply do not impact the validity of Row-sey’s conviction or sentence.
CONCLUSION
¶ 53. Rowsey does not raise an issue on appeal which would entitle him to appellate relief. We therefore affirm his conviction for aggravated assault and his ten-year sentence.
¶ 54. CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF *501 TEN (10) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE IN THIS CAUSE SHALL RUN CONSECUTIVELY TO THE PA-NOLA COUNTY SENTENCE THE APPELLANT IS CURRENTLY SERVING. APPELLANT SHALL PAY ALL COURT COSTS TO THE GREENE COUNTY CIRCUIT COURT IN MONTHLY INSTALLMENTS IN THE AMOUNT OF $50 TO BEGIN SIXTY (60) DAYS FROM DATE OF RELEASE FROM CUSTODY AND CONTINUE UNTIL ALL COSTS ARE PAID IN FULL.
DICKINSON, P.J., LAMAR, CHANDLER AND KING, JJ., CONCUR. COLEMAN, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., LAMAR, KITCHENS AND CHANDLER, JJ. PIERCE, J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., AND RANDOLPH, P.J.

. The gang is referred to as the “Crypts” in the transcript.

. A-defendant may waive his or her right to a , speedy trial if the defendant makes a knowing and intelligent waiver of this right, See Berry v. State, 728 So.2d 568, 570 (Miss.1999) ("[T]he right to a speedy trial is a fundamental constitutional right, and a defendant may only waive her speedy trial right by knowing and intelligent waiver."). For" example, if a defendant enters a plea of guilty in the trial court, he "or she must knowingly and intelligently waive his or her right to a speedy trial.