# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-01161-COA

**JOSHUA ANTHONY PETERMAN A/K/A**         **APPELLANT**
**JOSHUA A. PETERSON A/K/A JOSHUA**
**PETERSON**

**v.**

**STATE OF MISSISSIPPI**         **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 07/12/2018 |
| TRIAL JUDGE: | HON. ROGER T. CLARK |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: ERIN ELIZABETH BRIGGS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: MATTHEW WYATT WALTON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 11/26/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE J. WILSON, P.J., McDONALD AND McCARTY, JJ.**

**McDONALD, J., FOR THE COURT:**

¶1.     On December 29, 2016, a Harrison County grand jury indicted Joshua Anthony Peterman a/k/a Joshua A. Peterson a/k/a Joshua Peterson[1] (Peterman) as a habitual offender for the murder of Tena Marie Broadus (Tena).  Because of Peterman's indigency, the court appointed counsel to represent him.  Prior to trial, Peterman filed a motion to dismiss his counsel and re-appoint new counsel, which the court denied.  A jury convicted Peterman, and

---

[1] Peterman uses various aliases, but for the purpose of this appeal we will refer to him as Peterman.

the court sentenced him to serve life in prison without eligibility for parole. Peterman subsequently filed a motion for a new trial or, alternatively, judgment notwithstanding the verdict (JNOV).[2] The court denied Peterman's post-trial motion. Feeling aggrieved, Peterman timely appealed.

¶2. On appeal, Peterman's state-provided appellate counsel raises only one issue—that the trial court erred in denying Peterman's pretrial motion to dismiss counsel and re-appoint new counsel. Peterman claims this denial caused him to proceed to trial without adequate representation and denied him his fundamental right to a fair trial. Peterman also filed a pro se brief in which he identifies sixteen additional "issues," but we do not address these because they were not properly briefed pursuant to Rule 28 of the Mississippi Rules of Appellate Procedure. Finding no error in the trial court's denial of Peterman's motion regarding counsel, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶3. On December 29, 2016, a Harrison County Circuit Court grand jury indicted Peterman[3] as a habitual offender for the first-degree murder of Tena. On January 18, 2017, Attorney Frank Philip Wittmann IV was appointed to represent Peterman. On the same day,

---

[2] Peterman argued to the trial court, among other things, that (1) the verdict was against the weight of the evidence, (2) the court erred in denying the pretrial motions made by Peterman and granting the pretrial motions made by the State, (3) the court erred in refusing Peterman's proposed jury instructions, (4) the court erred in violating his right to a speedy trial, and (5) the court erred in its rulings on evidentiary issues.

[3] Kari Parker and Devin Gregory were also indicted for the first-degree murder of Tena, and Natasha Sellers and Aaron Bobinger were indicted as accessories after the fact. They all testified against Peterman.

Wittmann filed a waiver of arraignment and a not-guilty plea on behalf of Peterman. On January 23, 2017, Wittmann filed a discovery motion for production and inspection pursuant to Rule 9.04 of the Uniform Rules of Circuit and County Court[4] on Peterman's behalf. Peterman filed two pro se motions for discovery dated February 10, 2017, and March 31, 2017, requesting that the State disclose additional information. Peterman also filed a motion for continuance, which the court granted, and the trial was reset for September 18, 2017.

¶4. On August 22, 2017, Wittmann sent Peterman a letter enclosing partial discovery. On October 4, 2017, the court granted a second motion for continuance and reset the trial for January 22, 2018.[5]

¶5. On October 25, 2017, Peterman filed a motion asking the court to dismiss his counsel and re-appoint new counsel. Peterman argued, among other things, that Wittmann had failed to secure evidence to assist in him preparing a defense and had failed to provide the discovery materials to him. In the motion, Peterman also stated that he had filed a complaint with the Mississippi Bar against Attorney Wittmann.

¶6. On November 13, 2017, the court held a hearing on Peterman's motion to dismiss counsel and re-appoint new counsel. Peterman testified that Wittmann was not responding to his letters or calls and that Wittmann was busy with a heavy caseload. Concerning Peterman's argument that Wittmann had failed to provide him with a copy of his discovery,

---

[4] We note that the Uniform Rules of Circuit and County Court relating to criminal practice have been replaced by the Mississippi Rules of Criminal Procedure, effective July 1, 2017.

[5] The record does not specify whether Wittmann or the State filed the motion for continuance.

Wittmann responded by asserting that he sent out the initial pages of discovery on August 22, 2017, and that he had very recently delivered the remaining pages of discovery. Wittmann explained that he initially only sent part of the discovery because "it is voluminous, and I generally do not like to send all of that out there because it walks off, and then that creates other complications."[6] Wittmann stated that he thought everything was resolved after he delivered the remaining pages of discovery to Peterman. Wittmann said that because the issue was apparently not resolved, he felt that he and Peterman had irreconcilable differences. Further, Wittmann stated that he did not think he could proceed to represent Peterman because of the bar complaint Peterman had filed against him. Peterman and Wittmann both testified that it would not be appropriate for Wittmann to represent Peterman. The court explained that a conflict of interest was different than a conflict where one person is unable to get along with another. The court took the matter under advisement and continued the hearing until November 20, 2017.

¶7.    At the November 20, 2017 hearing, Wittmann expressed to the court that he and Peterman "were on the same page" with him representing Peterman. Peterman responded that he understood that the court was not going to change his appointed lawyer and that he and Wittmann had spoken about their conflicts. The court concluded that the situation did not give rise to an actual legal conflict and denied Peterman's motion to dismiss counsel. In making its ruling, the court noted that Peterman had filed a bar complaint against his previous attorney of record.

---

[6] The record does not reflect what Wittmann meant by that statement since he offered no further explanation.

4

¶8.     Wittmann filed a motion for continuance in which he represented that Peterman waived all of his rights to a speedy trial.  On February 6, 2018, the court granted the motion, and the trial was reset for May 7, 2018.  Wittmann filed another, similar motion for continuance on May 7, 2018, which the Court granted.[7]  Trial was reset for June 25, 2018.

¶9.     Peterman's four-day trial commenced on June 26, 2018.  There were thirteen witnesses who testified on behalf of the State.  Tena's mother testified that she had filed a missing-person's report regarding her daughter and stated that the last person Tena had been seen with was Peterman.  Devin Gregory testified that three days prior to Tena's murder, he, Tena, and Peterman had broken into vending machines.  Gregory went on to say that Peterman fled when police arrived, but law enforcement apprehended and questioned Gregory and Tena.  Gregory testified that he told Peterman that Tena had given the police Peterman's name, implicating him as their accomplice.

¶10.    Gregory further testified that the last time he saw Tena was on the day she was murdered—September 18, 2015.  Along with Gregory, witnesses Kari Parker and Aaron Bobinger testified that Peterman had murdered Tena.  Collectively, they testified that Peterman duct-taped Tena to a chair, severely beat her, slit her throat, and then hung her by her feet to die.  They then placed her body in a box.  To dispose of Tena's body, Peterman called Natasha Sellers, who testified that she drove them to a wooded area.  On the way, they stopped to purchase lighter fluid.  At their destination, Peterman and Bobinger unloaded the

---

[7] The record does not reflect whether Peterman knew about the motions for continuance because he did not sign them.  Each motion was signed by Wittmann and the prosecutor.

5

box and burned Tena's body in a barrel. The next day, Peterman threw Tena's skull and remains into the Biloxi River.

¶11. During their investigation, law enforcement retrieved the skull, and a forensic analysis was performed. Experts testified that DNA from the teeth in the skull was compared to a sample of DNA taken from Tena's mother. The results showed that the DNA from the skull matched that of Tena's mother.

¶12. Peterman did not testify or call any witnesses on his behalf. The jury found Peterman guilty of first-degree murder, and the court sentenced him to serve life in prison without eligibility for parole as a habitual offender under Mississippi Code Annotated section 99-19-83 (Rev. 2015).

¶13. Peterman's attorney subsequently filed a motion for a new trial or, alternatively, a JNOV. In that motion, among other things, he argued that the court erred in denying his motion to dismiss counsel and to re-appoint new counsel. The court denied Peterman's motion. Peterman timely[8] appealed his conviction. His state-provided appellate attorney filed a brief raising one issue: whether Peterman's motion for new counsel should have been granted. Peterman, himself, filed a pro se document raising other issues.

**STANDARD OF REVIEW**

¶14. The Mississippi Supreme Court has held that a "trial court has discretion in considering a motion of an attorney to be discharged." *Rubenstein v. State*, 941 So. 2d 735, 783 (¶215) (Miss. 2006) (quoting *Taylor v. State*, 435 So. 2d 701, 703 (Miss. 1983)). Thus,

---

[8] The court denied the post-trial motion on July 12, 2018, and Peterman appealed on August 13, 2018. Because the thirtieth day fell on the weekend, this appeal is timely.

we review the ruling of the trial court for an abuse of discretion. *Rinehart v. State*, 883 So. 2d 573, 576 (¶9) (Miss. 2004). "When questions of law are raised, however, this Court employs a de novo standard of review." *Lofton v. State*, 233 So. 3d 907, 908 (¶4) (Miss. Ct. App. 2017).

## DISCUSSION

### I. Peterman's Motion to Dismiss Counsel and Re-appoint New Counsel

¶15. Although Peterman raised five substantive issues in his post-trial motion, the only issue raised on appeal by his state-provided appellate counsel is whether the trial court's denial of Peterman's motion to dismiss counsel and re-appoint new counsel forced Peterman to proceed to trial without adequate representation and therefore denied him his fundamental right to a fair trial.[9] We do not find that the trial court abused its discretion in denying Peterman's motion to dismiss counsel and re-appoint new counsel.

¶16. Again, a trial court has discretion to consider a motion to discharge counsel, and in such instances, a defendant must show good cause for the court to substitute counsel. *Taylor*, 435 So. 2d at 703. In *Taylor*, the trial court appointed Attorney Robert Taylor[10] to represent the defendant, Johnnie William Taylor, who was subsequently tried and convicted of aggravated assault. *Id* at 702. Taylor's lawyer continued to represent him on appeal. *Id.* The supreme court reversed and ordered a new trial. *Id*. A month and four days prior to the

---

[9] This is the sole issue on appeal because the sixteen additional issues in Peterman's pro se brief are not properly briefed.

[10] In that case, both the attorney's and the appellant's last name was Taylor.

7

new trial, Attorney Taylor filed a motion for leave to withdraw as counsel. *Id.* He also filed an amended motion on the day of the trial. *Id.* In the motion, Attorney Taylor alleged "that there was a conflict between him and appellant; that appellant did not cooperate with him; appellant had threatened to kill him and he had refused to cooperate in any way toward preparing for trial." *Id.* Additionally, "[t]he [defendant/]appellant stated that he did not trust [A]ttorney Taylor and did not wish him to represent him and would refuse to cooperate with him during the trial." *Id.*

¶17. The court overruled Attorney Taylor's motion that he be relieved from representing the appellant, finding that Attorney Taylor provided adequate representation in the first trial and that "[A]ttorney Taylor's representation on appeal was conducted properly and successfully." *Id.* In affirming the trial court's decision, the supreme court reiterated that the trial court has discretion in considering such a motion. *Id.* The court relied on the following reasoning:

> "[C]ertain restraints must be put on the reassignment of counsel lest the right be manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice. Therefore, in order to warrant a substitution of counsel during trial, the defendant must show good cause, such as a conflict of interest a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict."

*Id.* at 703 (citations and internal quotation marks omitted) (quoting *McKee v. Harris*, 649 F. 2d 927, 931 (2d Cir. 1981)). The question then is whether the appealing defendant has demonstrated good cause existed to support substitution of his assigned counsel. *Id.*

¶18. In the case at bar, the court did not find that good cause existed to relieve Wittmann of his duty to represent Peterman. During the November 13, 2017 hearing, the following

8

colloquy was recorded:

COURT:              . . . It may be that you're not satisfied with his speed in which he gets things answered for you, but I don't know that right now in and of itself is a sufficient reason that I should discharge him from his duties. Are you pursuing a bar complaint against him?

DEFENDANT:          I already have.

MR. WITTMANN:       (interjecting) . . . I think that we are at a position where we do have irreconcilable differences, and being in an adversarial role with the bar requesting a response from me, I don't think that I can proceed with representing him because of the bar complaint and because of the fact that we cannot -- obviously I was mistaken, he still has issues and wishes new counsel.

COURT:              He doesn't get to drive that ship.

MR. WITTMANN:       I understand that, Judge, but I think that I have a duty now to withdraw based in part on the bar complaint, based on other issues that I don't think would be appropriate for me to go into in court, that I have -- and it is rare that I come to this position, Judge, but I think that he needs additional counsel because of that.

DEFENDANT:          . . . I'm just asking if you please give me an attorney that I have—me and him have stepped on each other toes, and I apologized for this, but there's no going back. You know what I'm saying? I filed a bar complaint on him because I couldn't get some things done that I felt my life was depending on getting done at the time, so I did the bar complaint, and I can't take the bar complaint back. There's all this conflict between us. I'm just asking [sic] to please give me a chance.

COURT:              You need to understand what a conflict is. An actual conflict is different than a conflict where you can't get along with your lawyer. A true conflict of interest is one that if a true conflict of interest arose, Mr. Wittmann could not represent you. Personality conflict is something

9

different. Communication conflict is something different. So if I appoint a new lawyer to you, how is that person going to be ready for January 22nd because I don't think this case is moving off that calendar?

DEFENDANT: The only thing I can say about that, what have we done to get ready for January 22nd? We've not done anything to get ready for January 22nd either. . . .

¶19. After taking Peterman's motion under consideration, the court ruled as follows:

[W]hat we have here is not an actual conflict of interest. Removal would be required in the instance there is an actual conflict of interest. Presumably would cause the attorney to breach his duty of loyalty to the client, an actual conflict of interest, as opposed to what I believe is here which is a communications issue or responsiveness issue from the point of view of the defendant. When an actual conflict arises in a situation in which the lawyer's loyalty is it divided because he represents both the criminal defendant and a witness for the prosecution. That's not the case here. From the record that I've seen, Mr. Wittmann and Mr. Peterman have some communication issues that they advised the court they're working through. And Mr. Peterman perceives Mr. Wittmann to be doing less than what he expects on his case, which resulted in a bar complaint. And for the record, that's not the first bar complaint this defendant has filed against his attorney of record, one before Mr. Wittmann, also, was the subject of a bar complaint by Mr. Peterman. I do recognize that Mr. Wittmann is offended by the accusations, but the situation here does not give rise to an actual legal conflict. So, accordingly, the motion of Mr. Peterman to discharge Mr. Wittmann and to substitute counsel is noted for the record, but it's overruled.

¶20. The supreme court addressed a similar set of facts in *Rowsey v. State*, 188 So. 3d 486, 490 (¶¶2, 4) (Miss. 2015). In that case, the defendant, who had thrown scalding water on a fellow prison inmate, was charged with aggravated assault. *Id.* The circuit court appointed Brandy Hambright to represent Rowsey. *Id.* at (¶4). The next day, Rowsey waived his right to an arraignment. *Id.* But, on the same day, Rowsey sent a complaint to the Mississippi Bar in which he protested Hambright's recommendation that he waive arraignment. *Id.* at 490-91

(¶5). Shortly thereafter, Rowsey sent a letter to the Mississippi Bar and informed the Bar that "there is no need for a District Attorney. My attorney and the [c]ourt are prosecutors." *Id.* (emphasis omitted). Thereafter Hambright filed a motion to withdraw as counsel. *Id*. The court granted the motion and appointed Davis Futch to represent Rowsey. *Id*. at (¶6).

¶21. After several continuances and Rowsey's psychological examination, Futch filed a motion to withdraw as Rowsey's counsel, stating that Rowsey had "continually berated and harassed" him and had filed a complaint against him with the Mississippi Bar. *Id*. at (¶¶6-9). Futch averred that Rowsey "has filed numerous motions and filings and will not follow any guidance whatsoever from the attorney and has created such a state of conflict that the appointed attorney cannot effectively represent the best interests of Rowsey in any manner." *Id.* at (¶9). Further, Futch asserted "that based upon the attorney's and the Defendant's feelings and animosity against each other, a conflict of interest has developed that is insurmountable." *Id*. The trial court never ruled on this motion. *Id*.

¶22. The jury returned a guilty verdict, *id*. at 492 (¶13), and on appeal the defendant argued, among other things, that his attorney was ineffective per se because he and Futch had an actual conflict of interest. *Id*. at (¶15). The supreme court held that

> [a]n actual conflict of interest is not at issue here. Instead, what is evident from the record is a personality conflict between the attorney and his client, not unlike the personality conflict which existed between Rowsey and his first appointed counsel. Counsel is presumed to be competent[.] An indigent criminal defendant is not entitled to expert counsel, or to counsel of his own choosing, but only to reasonably effective assistance of counsel.

*Id*. at 499 (¶43) (internal quotation mark omitted). Thus, the court found that because no actual conflict was at issue Rowsey was not entitled to relief on that issue notwithstanding

11

the fact that a bar complaint was filed against the attorney. *Id*. at 499 (¶¶43-44).

¶23.   In this case, the court stated at the November 20, 2017 hearing that Peterman had filed a bar complaint against his previous attorney. But here, as in *Rowsey*, Peterman's second bar complaint does not necessarily establish good cause for a court to dismiss the appointed counsel. As outlined in *Taylor* and *Rowsey*, "the defendant must show good cause, such as a conflict of interest[,] a complete breakdown of communication[,] or an irreconcilable conflict *which leads to an apparently unjust verdict*." *Taylor*, 435 So. 2d at 703 (quoting *United States v. Calabro*, 467 F.2d 973, 986 (2d Cir. 1972)). In this case, the court did not find any such good cause. The record supports the court's ruling that there was merely a personality conflict between Peterman and Wittmann. Moreover, Peterman fails to provide evidence as to how Wittmann's continued representation led to an unjust verdict. Without such a showing we cannot find that good cause existed requiring a change in Peterman's counsel. Therefore, we find that the court did not abuse its discretion in denying Peterman's motion.

## II.   Issues Raised in Peterman's Pro Se Filing

¶24.   Peterman filed a pro se "Statement of Issues" in which he lists sixteen additional "issues," most of which were argumentative statements:[11]

1.   Peterman had no motive to kill Tena Marie Broadus.

2.   During cross examination it came to light that Aaron Bobinger was the Boyfriend of Tena Broadus.

---

[11] These are listed as written by Peterman, which explains some of the awkward wording, spelling, and capitalization.

3. Tena Broadus had a fight with Aaron Bobinger where Mr. Bobinger did make a threat on Tena Broadus stateing that he would kill Ms. Tena Broadus.

4. At no time did the prosecution offer any evidence that Mr. Peterman had a motive (or) ever expressed any aggression towards Ms. Broadus.

5. Mr. Gregory stated (tr.145) In the kitchen Parker told Gregory at she cut Tena's throat. The State points this out in there brief.

6. There was a human skull recovered from the bottom of the Biloxi River, The crime lab admitted to a mistake on the DNA testing. where DNA was tested on mother and son not on the skull recovered.

7. There is no DNA evidence that Tena Broadus skull was found in the Biloxi River.

8. Prosecution introduced a 55 gallon drum saying Ms. Tena Broadus was burn in it. There was no DNA linking this drum to the missing Tena Broadus.

9. There is no evidence linking this 55 gallon drum to Mr. Peterman.

10. There was no DNA linking this black box to the missing Tena Broadus

11. There is no evidence linking this Black Box to Mr. Peterson.

12. This evidence was located on the same street as Aaron Bobinger and (no) connection to Mr. Peterman.

13. Mr. Wittman testified that he did not have Mr. Petterman's best enterest at breast.

14. Mr. Pettermans Attorney's actions and statement clearly fall under *Strickland's* (3) prongs.

15. During trial court was stopped multable times because of threats.

16. Mr. Peterman ask for a mistrial (3) three times. The court denied Petermans motion for miss trial.

¶25. Pursuant to Rule 28(a)(7) of the Mississippi Rules of Appellate Procedure, the

argument in an appellant's brief must contain "the contentions of appellant with respect to the issues presented, and the reasons for those contentions, with citations to the authorities, statutes, and parts of the record relied on." *See also Batiste v. State*, 121 So. 3d 808, 861 (¶134) (Miss. 2013); *Taylor v. Kennedy*, 914 So. 2d 1260, 1262 (¶4) (Miss. Ct. App. 2005). Peterman's pro se brief fails to provide the reasons for his contentions and cites no authority or record citations to support each issue. Peterman simply lists the sixteen issues/facts identified above. Therefore, we will not address these additional issues because they are not properly briefed.

### III.    Ineffective Assistance of Counsel

¶26.    It appears that Peterman attempts to argue that his counsel was ineffective in paragraphs thirteen and fourteen of his pro se filing. Peterman's ineffective-assistance-of-counsel claim would be better presented to the Court in a motion for post-conviction collateral relief. *See Pace v. State*, 242 So. 3d 107, 118 (¶28) (Miss. 2018) ("'It is unusual for this Court to consider a claim of ineffective assistance of counsel when the claim is made on direct appeal[]' because 'there is usually insufficient evidence within the record to evaluate the claim[.]'") (quoting *Wilcher v. State*, 863 So. 2d 776, 825 (¶171) (Miss. 2003))); *Rowsey*, 188 So. 3d at 497 (¶35). "Where the record cannot support an ineffective assistance of counsel claim on direct appeal, the appropriate conclusion is to deny relief, preserving the defendant' right to argue the same issue through a petition for post-conviction relief." *Pace,* 242 So. 3d at 118 (¶28). Because this issue was not fully briefed with references to the record, we do not evaluate his claim at this time. But we acknowledge that the argument is

not waived and that Peterman may raise it in a post-conviction relief motion should he so desire.

## CONCLUSION

¶27. Finding no error in the court's denial of Peterman's motion to dismiss counsel and re-appoint new counsel, we affirm the conviction and sentence ordered by the Harrison County Circuit Court. This opinion does not reach the additional claims stated in Peterman's pro se brief, but we note that his ineffective-assistance-of-counsel claim may still be raised in a post-conviction collateral proceeding should he desire to pursue the claim.

¶28. **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, TINDELL, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.**