# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CP-00889-COA

**DANIEL WOOD**                                              **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                      **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/29/2018 |
| TRIAL JUDGE: | HON. GERALD W. CHATHAM SR. |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DANIEL WOOD (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: MATTHEW WYATT WALTON |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 03/10/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE CARLTON, P.J., TINDELL AND McDONALD, JJ.

### CARLTON, P.J., FOR THE COURT:

¶1. Daniel Nathan Wood pleaded guilty to child fondling and child exploitation charges brought against him. Wood was sentenced to serve fifteen years in the custody of the Mississippi Department of Corrections (MDOC) for the child-fondling conviction and five years for the child-exploitation conviction, with these sentences set to run concurrently. Wood was also sentenced to ten years of post-release supervision and was ordered to pay a $1,000.00 assessment to the Children's Trust Fund.

¶2. The trial court summarily dismissed Wood's subsequently-filed motion for post-conviction collateral relief (PCR) in which Wood asserted that he had received ineffective assistance of counsel; his guilty plea was involuntary; and he was incompetent to plead

guilty. Wood appealed, raising the following issues: (1) the trial court erred in denying his request for new counsel; (2) he received ineffective assistance of counsel; (3) his guilty plea was involuntary; (4) he was incompetent to enter a guilty plea; and (5) the trial court erred in failing to allow him to withdraw his guilty plea. For the reasons addressed below, we affirm.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶3. A DeSoto County grand jury indicted Wood in January 2015 for one count of sexual battery in violation of Mississippi Code Annotated section 97-3-95(1)(d) (Rev. 2014), one count of fondling in violation of Mississippi Code Annotated section 97-5-23 (Rev. 2014), and one count of child exploitation in violation of Mississippi Code Annotated section 97-5-33(5) (Rev. 2014).

¶4. Wood was appointed counsel. His lawyer filed a "Motion for Mental Examination" in the trial court, seeking a determination whether Wood could "ascertain[] the difference between right and wrong and . . . whether . . . [Wood had the] capacity to assist his Counsel in this cause." That motion was granted in June 2015, and the trial court ordered that Dr. Criss Lott perform Wood's evaluation. The trial court ordered Dr. Lott to evaluate Wood to determine:

> (a) whether or not [Wood] has a factual as well as rational understanding of the nature and object of the legal proceedings against him, and has the ability reasonably to assist his attorney in the preparation of his defense; (b) to describe his mental state at the time of the alleged offense with respect to his ability to know the difference between right and wrong in relation to his actions at that time, and (c) to describe his current mental state as it may be the product of mental illness or substance abuse.

2

Dr. Lott evaluated Wood in September 2015, addressed the points set forth in the trial court's order in his report, and found that Wood was competent to proceed in this matter. Dr. Lott's report will be discussed in detail below.

¶5.     Wood filed a "Petition to Enter Plea of Guilty" on January 7, 2016, pleading guilty to the child-fondling and the child-exploitation charges against him.[1] Wood's plea hearing took place on the same day. At the beginning of the plea hearing, the trial court asked Wood if he had any history of mental illness or emotional problems. When Wood responded that he did, the trial court conducted a competency hearing before proceeding with the plea hearing. The details of the competency hearing are discussed below.

¶6.     The trial court then continued with Wood's plea hearing. The State presented the factual basis for the child-fondling and sexual-exploitation charges against Wood. When the State was done, the trial court asked Wood whether he had any disagreements with the State's factual basis for these charges against him. Wood responded, "No, sir."

¶7.     The trial court then advised Wood of each right that he would be giving up by pleading guilty and specifically asked Wood, "Do [you] understand these rights I've gone over with you and [do] you understand that you're giving those up by pleading guilty here today, Mr. Wood?" Wood replied, "Yes, sir." The trial court then told Wood the possible sentences and other penalties Wood would face by pleading guilty, and Wood confirmed that he understood these potential penalties. The trial court also asked Wood, "Has anyone tried to threaten you or tried to force you or tried to offer you any money, put you under duress,

---

[1] The sexual-battery charge against Wood was remanded to the file.

3

intimidate you in any manner to get you to plead guilty, Mr. Wood?" Wood responded, "No, sir."

¶8. Wood also confirmed at his plea hearing that he had no complaints with his lawyer and that he was satisfied with his lawyer's services, as follows:

[COURT:] Mr. Wood, are you satisfied with the services rendered to you by [your lawyer]?

[WOOD:] Yes, sir.

[COURT:] Has [your lawyer] been available to you at all reasonable times and places?

[WOOD:] Yes, sir.

[COURT:] Do you have any complaints against [your lawyer] or against this court?

[WOOD:] No, sir.

Wood admitted that he committed the crimes to which he was pleading guilty, and in response to the trial court's question, "[Was it] [y]our decision to plead guilty or [your lawyer's] decision?" Wood said, "My decision."

¶9. After he pleaded guilty, but before his sentencing hearing, Wood filed a letter addressed to the trial judge in which Wood asked the court to appoint a new public defender to represent him. Wood asserted that he was too intimidated by his lawyer to ask questions about his guilty plea and that the only reason he pleaded guilty was because his lawyer told Wood there were no other options available to him. Wood also asserted that his lawyer did not discuss Dr. Lott's report with him and that his lawyer would not return phone calls or respond to letters from Wood. Additionally, Wood asserted that his lawyer did not go over

4

Wood's discovery with him. In concluding his letter, Wood asked that the trial court "please grant my request for new coun[se]l based upon [my lawyer's] ineffective assistance in my case."

¶10. Wood's sentencing hearing was held on March 17, 2016. Before the sentencing hearing began, however, there was some discussion about whether Wood was seeking to withdraw his guilty plea. The facts pertaining to this issue are discussed below.

¶11. At Wood's sentencing hearing, the trial court also addressed Wood's written request for new counsel. The trial court allowed Wood to read a statement that Wood had prepared in which he essentially repeated the same assertions about his lawyer that Wood had made in the letter he sent to the trial judge prior to his sentencing hearing.

¶12. After Wood finished making his statement, the trial court read from a transcript from Wood's plea hearing and noted on the record the contradictions between Wood's assertions about his lawyer at his sentencing hearing and Wood's prior sworn testimony from his plea hearing, as follows:

> [COURT:] .... I asked you during that plea dialogue, "Has anyone tried to threaten you or tried to force you or tried to offer you any money to put you under duress, intimidate you in any manner to get you to plead guilty?" You said, "No, sir." Then I said, "Mr. Wood, are you satisfied with the services rendered to you by [your lawyer]?" And you said, "Yes, sir." I said, "Has [your lawyer] been available to you at all reasonable times and places?" And you said, "Yes, sir." "Do you have any complaints against [your lawyer] or against this court?" To which you replied, "No, sir."
>
> Now you're telling me that—you read a letter to me saying [your lawyer] wouldn't call you, wouldn't talk to you, wouldn't do any of these things, more or less voicing these complaints against your lawyer.

5

[WOOD:] Yes, sir.

After making this comparison, the trial court denied Wood's request for new counsel, finding that Wood's "complaints against [his lawyer] . . . are unfounded and contradictory to what [Wood] told [the court] under oath back in January."

¶13. The trial court then proceeded with the sentencing hearing, announcing, "All right. As stated, Mr. Wood entered a guilty plea back on January 7, 2016, to the charges of child fondling and exploitation. I'll hear from the State." The State presented the testimony of two witnesses: the victim's father and the detective who investigated Wood's case. After the State's witnesses testified, Wood's lawyer explained that he did not have any witnesses but that he did have a statement from Wood's mother about his social and behavioral problems from kindergarten through Wood's post-high school training at Moore School of Technology. The statement from Wood's mother and Dr. Lott's mental evaluation of Wood were admitted into evidence. The trial court then heard oral argument from counsel.

¶14. At the conclusion of the hearing, the trial court sentenced Wood to serve fifteen years for fondling in violation of section 97-5-23 and five years for child exploitation in violation of section 97-5-33(5) in the custody of the MDOC, with these sentences set to run concurrently. The trial court also sentenced Wood to ten years of post-release supervision but waived all fines, costs, and assessments except for a $1,000.00 assessment to the Children's Trust Fund.

¶15. Wood filed his PCR motion in March 2018. He asserted (1) that he received ineffective assistance of counsel; (2) that his guilty plea was involuntary; and (3) that he was

6

incompetent to plead guilty. After considering the entire court file, proceedings, and transcripts in Wood's PCR cause and his criminal case, the trial court concluded "that it appears beyond doubt that Wood can prove no set of facts in support of his claims which would entitle him to relief." Accordingly, the trial court summarily dismissed Wood's PCR motion. Wood appealed.

## STANDARD OF REVIEW

¶16.    "When reviewing a circuit court's denial or dismissal of a PCR motion, we will only disturb the circuit court's factual findings if they are clearly erroneous; however, we review the circuit court's legal conclusions under a de novo standard of review." *Skinner v. State*, 270 So. 3d 1046, 1050 (¶16) (Miss. Ct. App. 2018).

## DISCUSSION

### I.    Wood's Request for New Appointed Counsel

¶17.    Wood asserts that the trial court abused its discretion when it refused to grant his request for new counsel after Wood pleaded guilty, but before he was sentenced. Wood asserts that the trial court allegedly proceeded with the sentencing hearing "with the full knowledge that [Wood] and [his] attorney had reached an insuperable impasse." We find that Wood's first issue on appeal is procedurally barred because Wood did not present this issue as a basis for post-conviction relief before the trial court. This Court "do[es] not consider matters on appeal that were not placed first before the trial judge for decision." *Bates v. State*, 952 So. 2d 320, 324 (¶13) (Miss. Ct. App. 2007).

¶18.    Even if Wood had raised this assertion in his PCR motion, we find that it is without

merit. As this Court recognizes, "[w]hen a defendant seeks to have his appointed counsel removed, the sound discretion of the trial judge is invoked." *Parks v. State*, 228 So. 3d 853, 866 (¶48) (Miss. Ct. App. 2017). In *Parks*, this Court found that the trial court did not abuse its discretion in denying the defendant's motion for new counsel where the trial court determined that counsel "was a competent attorney who had done nothing detrimental to [the defendant's] case." *Id.* at 866 (¶50). As the Mississippi Supreme Court recognized in *Rowsey v. State*, 188 So. 3d 486, 499 (¶43) (Miss. 2015), "[c]ounsel is presumed to be competent. An indigent criminal defendant is not entitled to expert counsel, or to counsel of his own choosing, but only to reasonably effective assistance of counsel." The supreme court also observed that "[a]dept representation encompasses two broad principles: minimum competence and loyal assistance." *Id.* at 498 (¶41) (citation omitted).

¶19. We find that the supreme court's analysis in *Rowsey* of what constitutes competent and effective counsel is applicable here. In *Rowsey*, the defendant filed a bar complaint against his lawyer, and, according to Rowsey's lawyer, there existed "such a state of conflict . . . [and] animosity" between counsel and his client that Rowsey's lawyer felt compelled to move to withdraw from the case. *Id.* at 498 (¶42). The trial court did not rule on this motion. *Id.* at 491 (¶9). On appeal, Rowsey asserted that this conflict between him and his lawyer constituted "per se ineffective[ness]" on the part of his lawyer. *Id.* at 498 (¶40). The supreme court disagreed, finding that despite the apparent "personality conflict" between Rowsey and his lawyer, this did not constitute ineffective assistance of counsel where Rowsey's lawyer "filed pretrial motions, performed an investigation into the case, filed a

motion for Rowsey to receive a mental evaluation, cross-examined witnesses at trial, and made evidentiary objections." *Id.* at 499 (¶43).

¶20. A similar situation is present here. Wood alleges that he and his lawyer had "reached an insuperable impasse," but even if this perceived personality conflict existed between Wood and his counsel, we find no evidence in the record that Wood's lawyer was ineffective, incompetent, or had done anything detrimental to Wood's case that would support a determination that the trial court abused its discretion in denying Wood's motion for an appointment of new counsel. On the contrary, the record reflects that Wood's lawyer moved to have Wood receive a mental evaluation, that motion was granted, and Dr. Lott's report was submitted to the trial court and admitted into evidence at Wood's guilty-plea hearing and sentencing hearing. The record also reflects that Wood's lawyer stated at the hearing that he had "worked carefully with [Wood's] mother, who provided [him] with [a] statement and information" about Wood's behavioral problems, which Wood's lawyer presented at Wood's sentencing hearing.

¶21. The sentencing hearing transcript also shows that Wood's lawyer effectively cross-examined the State's witnesses at that hearing and presented cogent, mitigating reasons for the trial court's consideration in determining Wood's sentences, including Wood's psychological profile and social problems as described in Dr. Lott's report and in the statement from Wood's mother. Wood's lawyer also pointed out that Wood accepted responsibility for his actions.

¶22. In denying Wood's request for new counsel, the trial court also observed that Wood

9

was appointed an experienced lawyer, recognizing that Wood's lawyer was "the most senior member of the public defenders' staff in DeSoto County . . . . He's got more experience as a public defender than all the rest of them put together." Under these circumstances, we find that the trial court did not abuse its discretion in denying Wood's motion for an appointment of new counsel in this case.

## II.     Ineffective Assistance of Counsel

¶23.    In addition to asserting that the trial court erred by denying Wood's request for new counsel, Wood asserts that he was denied effective assistance of counsel because his lawyer allegedly did not return phone calls or letters and allegedly "made no effort to discuss any possible defense . . . [or] discuss potential mitigating factors" with him. Wood also asserts that his lawyer allegedly did not file "motions" on Wood's behalf or give Wood a copy of certain discovery.

¶24.    First, we find that Wood's ineffective-assistance-of-counsel issue on appeal is procedurally barred because he cites no legal authority to support his assertions that his lawyer's performance was constitutionally deficient. "The failure to cite any relevant authority operates as a procedural bar, and obviates the appellate court's obligation to review such issues." *Robinson v. State*, 169 So. 3d 916, 923 (¶18) (Miss. Ct. App. 2014) (internal quotation mark omitted).

¶25.    Although this Court has consistently held that procedural bars apply to ineffective-assistance-of-counsel claims, *Parish v. State*, 203 So. 3d 718, 723 (¶22) (Miss. Ct. App. 2016), we recognize that in certain cases, "an attorney's performance is so deficient and

10

prejudicial to a defendant, that it is deemed to be violative of the defendant's fundamental constitutional rights." *Hamberlin v. State*, 165 So. 3d 491, 494 (¶13) (Miss. Ct. App. 2015). We therefore address Wood's ineffective-assistance-of-counsel claim on the merits. In order to prove his ineffective-assistance claim, the caselaw provides that Wood must show "(1) his attorney's performance was deficient, and (2) this deficiency deprived him of a fair trial." *Gaulden v. State*, 240 So. 3d 503, 510 (¶22) (Miss. Ct. App. 2018); *see Strickland v. Washington*, 466 U.S. 668, 687 (1984).

¶26.     In the guilty plea context, as here, in order to eliminate the procedural bar, Wood must "establish that counsel's ineffective assistance caused him to enter his plea, and he would not have entered the plea but for counsel's incorrect advice." *Moore v. State*, 248 So. 3d 845, 851 (¶14) (Miss. Ct. App. 2017) (internal quotation mark omitted). Further, "a defendant's claims of ineffective assistance of counsel must be pled with specificity, and the claim must be supported by affidavits other than his own." *Id.* at (¶15) (internal quotation mark omitted). In this regard, "[w]hen the only support the movant offers is his own affidavit, and it is contradicted by unimpeachable documents in the record, an evidentiary hearing is not required." *Kennedy v. State*, 287 So. 3d 258, 265 (¶22) (Miss. Ct. App. 2019) (quoting *Lackaye v. State*, 166 So. 3d 560, 564 (¶12) (Miss. Ct. App. 2015), *cert. denied*, 279 So. 3d 1087 (Miss. 2019)). However, if the movant "attaches an affidavit of another who supports the allegation, the circuit court may be required to conduct an evidentiary hearing." *Id.* at 265-66 (¶22).

¶27.     Regarding Wood's assertion that his lawyer allegedly did not return his phone calls

and letters, we recognize that Wood submitted his own affidavit and the affidavit of Benjamin Rodriguez. Rodriguez stated in his affidavit that he met Wood in October 2014 when he and Wood were housed in "G-Tank" at the DeSoto County jail in Hernando, Mississippi. Rodriguez's affidavit, however, reflects that Rodriguez was only in "G-Tank" from July 2014 to January 2015. Wood did not file his guilty-plea petition until January 2016—one full year after Rodriguez was no longer in jail with Wood. We find no evidence in the record that Rodriguez had any personal knowledge of what went on between Wood and his lawyer during the entire year before Wood pleaded guilty. As such, Wood's affidavit, alone, is Wood's only support for his "lack of communication" assertion for the year prior to him pleading guilty and it is not enough. *Moore*, 248 So. 3d at 851 (¶¶14-15).

¶28.   Regarding Wood's other allegations—that, according to Wood, his lawyer allegedly did not discuss with Wood any mitigating factors or possible defenses, refused to file motions on Wood's behalf, or refused to give Wood a copy of certain discovery—these allegations are supported *only* by Wood's own affidavit. As the supreme court has held, "in cases involving post-conviction relief, 'where a party offers *only* his affidavit, then his ineffective assistance of counsel claim is without merit.'" *Parish*, 203 So. 3d at 724 (¶25) (emphasis added) (quoting *Vielee v. State*, 653 So. 2d 920, 922 (Miss. 1995)).

¶29.   Under these circumstances we find that the trial court was not required to conduct an evidentiary hearing. We further find that Wood failed to prove any instance of deficiency on his lawyer's part that would constitute ineffective assistance of counsel of constitutional dimensions. Indeed, as we found in our discussion above, the record contains numerous

12

instances demonstrating that Wood's lawyer rendered competent, effective assistance with respect to all aspects of Wood's case. Moreover, Wood's assertions about the alleged lack of communication between him and his lawyer are contradicted by the "unimpeachable documents in the record"—including Wood's plea petition in which Wood agreed that "[m]y lawyer has advised me of the nature of the charge(s) and the possible defenses that I may have to the charge(s)" and the transcript from Wood's plea hearing in which Wood testified that his lawyer went over his plea petition with him and answered all questions to his satisfaction and also confirmed that he (the lawyer) "had ample time to investigate, prepare, and discuss this case with [Wood] and . . . go over all possible defenses." Wood also assured the trial court at his plea hearing that he was "satisfied with the services rendered to [him] by [his lawyer]"; that his lawyer was reasonably available to him; and that he had no complaints against his lawyer. *See Thomas v. State*, 159 So. 3d 1212, 1216 (¶12) (Miss. Ct. App. 2015) ("[S]tatements made in open court under oath 'carry a strong presumption of veracity." (internal quotation marks omitted)).

¶30. Regarding Wood's allegations that his lawyer failed to filed "motions" on his behalf or give Wood a copy of certain discovery, we observe that Wood has failed to establish that these actions caused Wood to enter his guilty plea; thus, Wood's ineffective-assistance-of-counsel claim also fails for this reason.[2] *Moore*, 248 So. 3d at 851 (¶14).

---

[2] Additionally, Wood's assertion that his lawyer did not file "motions" on his behalf ignores the fact that his lawyer filed a motion seeking a mental evaluation for Wood, which the trial court granted. Wood does not specify any other "motions" he believed should have been filed. Further, any decision about whether other motions were necessary is discretionary and "within the ambit of trial strategy." *Dedeaux v. State*, 205 So. 3d 697, 701 (¶10) (Miss. Ct. App. 2016). Any such decision does not, therefore, constitute grounds for

¶31. Finally, in his reply brief, Wood acknowledged that his lawyer told the trial court that he had Asperger's Syndrome, but Wood also asserts that his lawyer should have gone into more detail at Wood's sentencing hearing on the limiting effect that Wood's condition had on his "social awareness, communication and understanding." Wood cannot rely on this bare assertion to support his ineffective-assistance-of-counsel claim. *Neal v. State*, 186 So. 3d 378, 381 (¶6) (Miss. Ct. App. 2016). Even if he could, this assertion, like Wood's assertions discussed above, are contradicted by the record. As we have detailed above, the record reflects that Wood's lawyer addressed possible mitigating factors at Wood's sentencing hearing, including Wood's social, mental, and behavioral history. Wood's lawyer obtained a mental evaluation for Wood and had Dr. Lott's detailed evaluation admitted into evidence at Wood's sentencing hearing, and Wood's lawyer worked with Wood's mother to obtain her statement about Wood's social and behavioral history. Wood's lawyer also had this information admitted into evidence at Wood's sentencing hearing. For all these reasons, we find that Wood's ineffective-assistance-of-counsel claim is without merit.

### III. Wood's Guilty Plea

¶32. In his third assignment of error, Wood asserts that his guilty plea was involuntary. Wood's allegations with respect to this issue are set forth in his brief as follows:

> [Wood] was afraid (and it resulted that [his] fear was justified) that counsel would retaliate against any effort to speak out against him by intentionally performing in an even more severely sub[-]par fashion in court for the purpose of seeing [Wood] receive a harsher sentence.

In his PCR motion, Wood asserted that he "did not understand why he was charged with

an ineffective-assistance-of-counsel claim. *Id.*

14

some of the charges."

¶33.    We find as an initial matter that this issue on appeal is procedurally barred because Wood cites no factual or legal support for his contention that his guilty plea was involuntary. *See Robinson*, 169 So. 3d at 923 (¶18). Notwithstanding this procedural bar, we also find that Wood's involuntary-guilty-plea assertion is without merit for the reasons discussed below.

¶34.    "A guilty plea is valid as long as it is entered voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences." *Haney v. State*, 281 So. 3d 84, 89 (¶14) (Miss. Ct. App. 2019). In this regard, "[f]or a plea to be voluntary, knowing, and intelligent, the judge must advise the defendant of his rights, the nature of the charge against him, and the consequences of his plea, including applicable minimum and maximum sentences." *Id.* Wood bears the burden of proving that his plea was invalid. *Britton v. State*, 130 So. 3d 90, 94 (¶11) (Miss. Ct. App. 2013).

¶35.    As this Court has recognized, "[i]n assessing the voluntariness of a plea, the thoroughness of the trial court's interrogation during the plea colloquy is the most significant evidence of all." *Neal*, 186 So. 3d at 381 (¶6) (internal quotation marks omitted). In this case, the plea hearing transcript reflects that (1) Wood was advised by the trial court of all rights he was giving up; (2) Wood understood (and admitted) the facts and circumstances of the charges against him; and (3) Wood understood the consequences of his plea. Wood's sworn plea petition likewise reflects that Wood (1) knew the rights he was giving up; (2) discussed the charges against him (and possible defenses) with his counsel; and (3) was

15

advised of the possible sentences and other consequences of pleading guilty. Wood's bare assertions that his guilty plea was involuntary do not overcome the detailed interrogation by the trial court during Wood's plea colloquy or Wood's own sworn statements in his plea petition. *Id.* We therefore find that Wood has failed to show his guilty plea was involuntary.

¶36.    The same is true for Wood's allegations that he was intimidated into pleading guilty because he was afraid that if he did not, his lawyer would allegedly "retaliate" by performing "in an even more sub-par fashion." The record plainly contradicts these allegations. In his plea petition, Wood swore:

> I have not been beaten, threatened, mentally or physically forced, intimidated, or coerced in any manner to plead guilty to the crime charged against me. I offer my plea of "guilty" freely and voluntarily and of my own accord and with full understanding of all matters set forth in the indictment herein and in this Petition, and this plea is with the advice and consent of my lawyer.

Wood likewise confirmed at his plea hearing that he was not forced to plead guilty, he was satisfied with the services rendered to him by his lawyer, and that it was his decision to do so, as follows:

> [COURT:]    . . . . Has anyone tried to threaten you or tried to force you or tried to offer you any money, put you under duress, intimidate you in any manner to get you to plead guilty, Mr. Wood?
>
> [WOOD:]    No, sir.
>
> [COURT:]    Mr. Wood, are you satisfied with the services rendered to you [your lawyer]?
>
> [WOOD:]    Yes, sir.
>
> [COURT:]    Do you have any complaints against Mr. Jones or against this court?

16

[WOOD:]       No, sir.

[COURT:]     Do you admit on the date that's charged in the indictment that you committed the crime to which you're pleading guilty?

[WOOD:]       Yes, sir.

[COURT:]     Your decision to plead guilty or [your lawyer's] decision?

[WOOD:]       My decision.

[COURT:]     Do you want me to accept your guilty plea?

[WOOD:]       Yes, sir.

¶37.   Wood did not submit any affidavit or other evidence in support of his "intimidation" allegations. Just as we observed above, Wood's bare assertions cannot overcome his sworn testimony from his plea hearing. *Id.* For these reasons, we find Wood's involuntary guilty plea assignment of error without merit.

### IV.    Wood's Competency to Enter a Guilty Plea

¶38.   Wood asserts in his fourth assignment of error that he was incompetent to enter his guilty plea. He sets forth this assertion in his brief as follows, "[Wood] was in special education from an early age as a result of social and emotional developmental disorders that limited his abilities to make clear and rational choices regarding his defen[s]e." For the reasons stated below, we find no error in the trial court's determination that Wood was competent to enter his guilty plea.

¶39.   "A trial judge's determination that a defendant is competent to stand trial will be reversed only if it is manifestly against the overwhelming weight of the evidence." *Hutto v. State*, 227 So. 3d 963, 974 (¶23) (Miss. 2017) (internal quotation mark omitted). "The

17

standard for competence to stand trial is whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him." *Montalto v. State*, 119 So. 3d 1087, 1093 (¶12) (Miss. Ct. App. 2013) (internal quotation marks omitted).

¶40.    Wood pleaded guilty in January 2016.  At that time, Uniform Rule of Circuit and County Court Practice 9.06 governed competency issues,[3] and it provided:

> If before or during trial the court, of its own motion or upon motion of an attorney, has reasonable ground to believe that the defendant is incompetent to stand trial, the court shall order the defendant to submit to a mental examination by some competent psychiatrist selected by the court . . . .
>
> After the examination the court shall conduct a hearing to determine if the defendant is competent to stand trial. After hearing all the evidence, the court shall weigh the evidence and make a determination of whether the defendant is competent to stand trial. If the court finds that the defendant is competent to stand trial, then the court shall make the finding a matter of record and the case will then proceed to trial. . . .

URCCC 9.06.  "Though geared toward competency to stand trial, Rule 9.06 may be applied to a defendant's entry of a guilty plea. The standard of competency necessary to enter a plea of guilty is the same as that for determining competency to stand trial." *Williams v. State*, 220 So. 3d 996, 999 (¶7) (Miss. Ct. App. 2017).

¶41.    In this case, on the motion of Wood's lawyer, the trial court entered an order requiring Wood to submit to a mental evaluation.  Dr. Lott performed Wood's mental evaluation in September 2015, and it was then filed with the trial court.  In his evaluation, Dr. Lott found

---

[3] Pursuant to the Adopting Order of the Mississippi Supreme Court dated December 13, 2016, the Mississippi Rules of Criminal Procedure took effect on July 1, 2017.  The Mississippi Rules of Criminal Procedure now set forth the procedure for competency hearings and adjudications. *See* MRCrP 12.1–12.6.

that Wood was competent to proceed in this matter, as follows:

> It is my opinion, to a reasonable degree of psychological certainty, that Mr. Wood has sufficient present ability to consult with his attorney with a reasonable degree of rational understanding in preparation of his defense, and has rational as well as factual understanding of the nature and object to the legal proceedings against him. He understands the charges against him and the maximum penalty he could receive if convicted. He was familiar with most of the basic legal processes. He understands his right to testify and he has a good understanding of the plea process. Mr. Wood had no difficulty communicating with me in a rational and coherent manner. He received psychological testing and his reading and intellectual scores fell in the superior range - and he should have no difficulty comprehending any legal information that is presented to him.

¶42. Wood filed his guilty-plea petition in January 2016, and in his petition Wood swore that "[a]t this time I am not under the influence of drugs or alcohol nor suffering from any mental disease of emotional problem." Wood's plea hearing was held the same day.

¶43. At Wood's plea hearing, the trial court asked Wood whether he had any history of mental illness or emotional problems. Wood told the trial court that he had a history of mental illness. The trial court noted that the file contained Dr. Lott's report, and a copy of Dr. Lott's report was admitted into evidence at the hearing. The trial court noted that Dr. Lott had been very "thorough in his assessment and his testing and his opinions," and then the trial court closely questioned Wood's lawyer about whether he, "as an officer of the court," believed that Jones was competent to proceed with his guilty plea. The trial court asked Wood's lawyer the following questions: (1) "[A]re you satisfied [Wood] understands the nature of these proceedings and that he is charged with a felony?" (2) "Has [Wood] been able to assist you in investigation and preparation for any defenses that he may have?" and (3) "Have you found [Wood] to be rational and capable of assisting you in his defense?"

19

Wood's lawyer responded affirmatively. The trial court asked Wood if he disputed anything his lawyer said, and Wood responded, "No, sir."

¶44. The trial court then asked Wood whether he had discussed Dr. Lott's report with his lawyer. Wood said he had not planned to do so "because [he] didn't expect anything of significance to be in it." Nevertheless, before hearing any further evidence on Wood's competency, the trial court required Wood and his lawyer to meet and for Wood's lawyer to go over Dr. Lott's report with Wood. After Wood and his lawyer returned, Wood told the trial court that he had gone over the report with his lawyer and stated that he did not disagree with anything in the report. Wood also told the trial court that he had gone over his plea petition with his lawyer and that his lawyer answered all the questions that he had about the petition. The trial court specifically questioned Wood as follows:

> [COURT:]  So you're telling me [that] you read it, you went over it with your lawyer, and you understand that by presenting this to me, you're asking me to allow you to plead guilty to child fondling and sexual exploitation?
>
> [WOOD:]  Yes, sir.

¶45. Wood was questioned further by the trial court, and Wood confirmed that he had finished high school, he received two years of college, and that he could read and write well. Finally, the trial court asked Wood, "You're telling me now that you understand where you are and what you're doing here today?" Wood responded, "Yes, sir."

¶46. The trial court then questioned Wood about his understanding of the proceedings, and Wood confirmed that he understood where he was and why he was at the courthouse that day; that he had not been coerced or threatened into pleading guilty; and that it was "[his]

20

decision" to plead guilty.

¶47.   Taking into consideration Dr. Lott's report, the statements made by Wood's lawyer, and the statements from Wood, the trial court made an on-the-record finding that Wood was competent to enter a guilty plea. Neither Wood nor his lawyer objected to this determination or requested a continuance to place other materials or testimony regarding Wood's competency before the trial court.

¶48.   Nevertheless, Wood asserted in his PCR motion that he was incompetent to plead guilty, attaching to his motion medical records from June and July of 2014 relating to his treatment for "stabilization" when he was found "at home searching for a gun to harm himself." This treatment, however, was received approximately eighteen months before Wood pleaded guilty. As the trial court observed in its order dismissing Wood's PCR motion, these medical records did not "relate to Wood's competency around or at the time of [Wood's] guilty plea."

¶49.   As the movant, Wood bore the burden of proof to show that he lacked the competency to enter his guilty plea. *Williams*, 220 So. 3d at 1000 (¶9). Like the trial court, we find that medical records relating to Wood's anxiety and depression suffered eighteen months before his plea hearing are wholly insufficient to meet this burden. *Id.* at 1000 (¶12) (recognizing that health records from prior years did not constitute evidence of whether the defendant lacked competency at the time of his plea hearing). Dr. Lott's report reflected that Wood's reading and intellectual scores fell in the superior range and that Wood was competent to proceed. Further, Dr. Lott's competency finding was supported by the responses of both

Wood and his lawyer to questioning from the trial court at Wood's plea hearing where both Wood and his lawyer confirmed that Wood had the ability to consult with his lawyer regarding potential defenses and that he understood the proceedings against him. We find no error in the trial court's determination that Wood was competent to enter his guilty plea.

### V. Wood's Purported Request to Withdraw His Guilty Plea

¶50. Wood asserts that the trial court erred in not allowing him to withdraw his guilty plea. He sets forth this assertion in his brief as follows:

> [Wood] made compelling arguments to support a decision by the trial court to allow the withdrawal of his guilty plea due in part to the fact that his counsel was grossly incompetent regardless of his long service as a public defender. Long service does not automatically endow someone with the necessary intelligence, ethics, or ability to prosecute a simple defense.

Wood briefly addressed his alleged desire to withdraw his guilty plea in his PCR motion as follows: "It's also plain in the transcript that the petitioner wanted to withdraw his guilty plea, which the trial judge only considered as a request not a motion. It was a motion[,] not a request."

¶51. This issue on appeal is procedurally barred because Wood cites no factual or legal support for his contention that the trial court erred when it allegedly did not "allow" him to withdraw his guilty plea. *See Robinson*, 169 So. 3d at 923 (¶18). Even if Wood were not procedurally barred from raising this issue, we also find that Wood's assertions are without merit as addressed below.

¶52. In its order summarily denying Wood's PCR motion on this point, the trial court observed that Wood did not file a motion to withdraw his guilty plea. The trial court further

22

stated that it did not believe that Wood "was actually making a motion to withdraw his guilty plea [at the sentencing hearing]." Our review of the record likewise indicates that Wood did not make a written or an oral motion to withdraw his guilty plea. To be clear, there is no written motion to withdraw Wood's guilty plea in the record. As described above, Wood filed a letter requesting a new lawyer, but our review of this letter reveals that it does not contain a request from Wood to withdraw his guilty plea.

¶53. Based upon our review of the record, we also find that Wood did not make an oral request to withdraw his guilty plea. We recognize that the sentencing hearing transcript reflects that before that hearing began, Wood's lawyer told the trial court that "Mr. Wood has filed I believe a request to set aside his plea. . . . I will let you address that with him." The trial court responded, "Well, what are we proceeding on here today?" In response, Wood's lawyer stated, "I'm here for sentencing unless the Court entertains [Wood's] motion to set aside his plea of guilty." The trial court then sought clarification from Wood on whether he wanted to withdraw his guilty plea, as follows:

[COURT:] Mr. Wood, you want to withdraw your guilty plea?"

[WOOD:] *I would like to get a new attorney first and then discuss it with him.*

[COURT:] Have you got any money to hire a lawyer with?

[WOOD:] No, sir.

[COURT:] How are you going to get a lawyer then?

[WOOD:] I was hoping the Court would appoint me one.

(Emphasis added).

23

¶54.    The following exchange took place between the trial court and Wood later during the hearing:

> [COURT:]    Now you want me to fire [your counsel] and give you somebody else?
>
> [WOOD:]    Yes, sir.
>
> [COURT:]    *I have been told by [your counsel] that you want to withdraw your plea of guilty; is that correct?*
>
> [WOOD:]    *I haven't decided on that yet.*
>
> [COURT:]    *You better decide pretty quick because you're fixing to be sentenced.*
>
> [WOOD:]    *That is an option I was going to pursue, yes, sir.*

(Emphasis added).

¶55.    At the time of Wood's March 17, 2016 sentencing hearing, Uniform Rule of Circuit and County Court Practice 8.04(A)(5)-(6) addressed the requirements to withdraw a guilty plea,[4] as follows:

> *Withdrawal of Plea of Guilty.*  It is within the discretion of the court to permit or deny a motion for the withdrawal of a guilty plea.
>
> *Sufficiency of Motion.*  In order to be sufficient, a motion to withdraw a plea of guilty must show good cause.

*See Britton v. State*, 130 So. 3d 90, 94 (¶10) (Miss. Ct. App. 2013) ("The decision of whether

---

[4] Pursuant to the Adopting Order of the Mississippi Supreme Court dated December 13, 2016, the Mississippi Rules of Criminal Procedure took effect on July 1, 2017.  *See Bernard v. State*, No. 2017-KA-01081-SCT, 2019 WL 6606212, at *5 (¶27) (Miss. Dec. 5, 2019) (recognizing that the Uniform Rules of Circuit and County Court Practice were "the law" during the relevant time period prior to the adoption of the Mississippi Rules of Criminal Procedure).  Rule 15.4(c) of the Mississippi Rules of Criminal Procedure sets forth the current requirements to withdraw a guilty plea.

to allow a defendant to withdraw a valid guilty plea lies within the discretion of the trial court.") (quoting *Burrough v. State*, 9 So. 3d 368, 372-73 (¶11) (Miss. 2009)).

¶56. We find that Wood's responses to the Court's questioning set forth above were insufficient to constitute an oral motion to withdraw his guilty plea. He made no explicit request to withdraw his guilty plea. Further, even if Wood's statements were enough to be treated as an oral request to withdraw his guilty plea, we find that the trial court plainly did not abuse its discretion in denying such a motion. A guilty plea is binding when it is entered knowingly and voluntarily. *Id.* As we found above, Wood's plea was knowingly, intelligently, and voluntarily given. As such, Wood entered a binding guilty plea. *Id.* Wood, in this case, offered no evidence at all that proves his guilty plea was invalid or to show good cause for its withdrawal. We therefore find this assignment of error without merit.

¶57. **AFFIRMED.**

**BARNES, C.J., J. WILSON, P.J., GREENLEE, WESTBROOKS, TINDELL, McDONALD, LAWRENCE AND C. WILSON, JJ., CONCUR. McCARTY, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**

25