# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-KA-00138-COA

**MOSES JEROME McLAURIN A/K/A MOSES McLAURIN**                    APPELLANT

v.

**STATE OF MISSISSIPPI**                                        APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 06/28/2023 |
| TRIAL JUDGE: | HON. MARK SHELDON DUNCAN |
| COURT FROM WHICH APPEALED: | SCOTT COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: AMBER LAUREN STEWART MOSES McLAURIN (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALLISON ELIZABETH HORNE |
| DISTRICT ATTORNEY: | STEVEN SIMEON KILGORE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 11/25/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., McDONALD AND EMFINGER, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1.    A Scott County Circuit Court jury convicted Moses McLaurin of felony possession of methamphetamine based upon an incident occurring on December 4, 2019. The trial court sentenced McLaurin to serve sixteen years in the custody of the Mississippi Department of Corrections (MDOC) as a nonviolent habitual offender and a subsequent drug offender. McLaurin filed a motion for a new trial or other relief, which the trial court denied.

¶2.    McLaurin appeals, asserting through counsel that (1) the evidence was insufficient to prove McLaurin's constructive possession of the drugs, or, alternatively, the verdict was

contrary to the weight of the evidence; (2) the trial court abused its discretion by allowing prejudicial hearsay testimony, or, alternatively, McLaurin's trial counsel was constitutionally ineffective in failing to timely object; (3) the trial court erred by excluding evidence to support McLaurin's theory of defense; and (4) the trial court erred in failing to use its discretion when sentencing McLaurin as a subsequent drug offender pursuant to Mississippi Code Annotated section 41-29-147 (Rev. 2023). McLaurin asserts, pro se, two additional issues, namely: (5) the trial court erred by qualifying the venire without McLaurin or defense counsel present; and (6) the trial court erred by admitting evidence that purportedly violated the spousal privilege. For the reasons addressed below, we affirm McLaurin's conviction. We reverse in part to vacate McLaurin's sentence under section 41-29-147 and remand the case to the Scott County Circuit Court for resentencing consistent with this opinion.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶3.     A Scott County grand jury indicted McLaurin for felony possession of methamphetamine as a subsequent drug offender pursuant to section 41-29-147 and as a habitual offender pursuant to Mississippi Code Annotated section 99-19-81 (Rev. 2020). McLaurin was tried before a jury on June 19, 2023.[1]

¶4.     Officer Michael Townsend testified for the State about the December 4, 2019 incident involving McLaurin. Officer Townsend was employed as a patrolman with the Scott County Sheriff's Department on December 4, 2019. Between 7:00 and 8:00 p.m. that night, Officer Townsend stopped a white Ford F-150 truck for reckless driving. He did not know who was

---

[1] McLaurin was previously tried for this offense during the February 2023 term, but the jury was unable to reach a unanimous verdict.

2

driving the truck at that time.

¶5. Officer Townsend activated his blue lights, but the truck did not immediately pull over. The truck proceeded to the end of a dead-end street and then stopped. The area was "very well lighted" due to a "big shop" on the property with the lights on all around it. Additionally, the patrol car's headlights and takedown[2] lights were on when Officer Townsend stopped McLaurin. As the truck stopped, Officer Townsend called dispatch and let them know of his location, the truck's tag, and information about the vehicle. Officer Townsend testified that as he was calling dispatch, McLaurin "exited the vehicle[,] . . . looked back over his shoulder, and . . . [then] . . . fled on foot." Officer Townsend pursued McLaurin down an embankment, almost tripped, and then lost sight of McLaurin. He ended his pursuit at this point. Officer Townsend testified that he commanded McLaurin to stop, and McLaurin looked back again but did not stop. Officer Townsend was certain the person was McLaurin. There was no one else in the vehicle.

¶6. After losing sight of McLaurin, Officer Townsend returned to the truck and performed an inventory search. He called dispatch to let them know he was performing the inventory. Inside the truck, Officer Townsend found a brown leather bag on the back driver's side floorboard. In the leather bag were McLaurin's driver's license, titles, and credit cards bearing his name. Inside the middle console, Officer Townsend found a clear plastic bag containing a hard, crystal-like substance. Keith McMahon, a forensic scientist specializing in drug analysis with the Mississippi Forensics Laboratory, testified that the substance was

---

[2] "Takedown" lights "offer intense illumination in front of the [patrol car]."

tested and confirmed to be 3.346 grams of methamphetamine.

¶7.    Officer Townsend testified about an interaction he had with McLaurin at the gym during which he believed McLaurin was trying to bribe him. Other than that incident, Officer Townsend testified that he had not had any other dealings with McLaurin outside of work. He also testified that his wife had not dated McLaurin.

¶8.    During his cross-examination, Officer Townsend acknowledged that he was the only officer present for the pursuit and the inventory search of the truck.  He did not take photos of the items in the truck before they were collected.  He was wearing a body camera that normally would be turned on during a traffic stop.  Officer Townsend testified that this case was different, though, because McLaurin began running just as Officer Townsend got out of his vehicle.  Officer Townsend said he immediately pursued McLaurin at that point, so he did not get a chance to turn on his body camera.

¶9.    Officer Brad Ellis also testified.  He assisted in the case after a suspect (McLaurin) was identified.  Officer Ellis testified that no fingerprints were taken from the truck because "we rarely ever have success" with taking fingerprints.[3]

¶10.   McLaurin's brother, Joshua, testified for the defense.[4] Josh testified that he and McLaurin were in Baton Rouge on the evening of the traffic stop (December 4, 2019), celebrating Josh's birthday and another woman's birthday who was with them.  Josh testified that he got to Baton Rouge about 8:00 p.m. and left around midnight.  McLaurin drove there

---

[3] We discuss another portion of Officer Ellis's testimony later.

[4] We discuss excluded testimony from Josh and Tracy Cannon concerning the brown leather bag later.

4

separately, and they "end[ed] up connecting as we were down there."

¶11.    Josh also testified that McLaurin dated Officer Townsend's wife in high school.[5] According to Josh, Officer Townsend began harassing McLaurin after "comments" McLaurin made about Officer Townsend's wife had gotten back to him. Josh testified that he had been with McLaurin twice when he was stopped by Officer Townsend "for no reason," and Josh had heard about other incidents when this occurred. Additionally, Josh testified that Officer Townsend had filed bribery charges against McLaurin that were later dropped.

¶12.    The jury convicted McLaurin as charged. As noted, the trial court sentenced McLaurin to serve sixteen years in the custody of the MDOC as a nonviolent habitual offender and subsequent drug offender, and further ordered McLaurin to pay fines, restitution, and court costs. McLaurin unsuccessfully moved for a new trial.

¶13.    McLaurin appealed.

## DISCUSSION[6]

### I.    Sufficiency and Weight of the Evidence

¶14.    McLaurin asserts that the State failed to present sufficient proof that he constructively possessed the methamphetamine found in the center console of the truck. For the same reason, McLaurin asserts that the verdict against him is also contrary to the weight of the evidence and that to allow it to stand would result in an unconscionable injustice. We find

_____

[5] At the time of trial, Officer Townsend had worked in law enforcement for fourteen years.

[6] The applicable standard of review for each issue is discussed in context.

5

McLaurin's assertions unpersuasive for the reasons we address below.

## A.     Sufficiency of the Evidence to Prove Constructive Possession

¶15.    "[We] review[] de novo a trial court's ruling on the legal sufficiency of the evidence." *Reindollar v. State*, 296 So. 3d 739, 742 (¶11) (Miss. Ct. App. 2020). In this regard, we must examine the evidence "in the light most favorable to the State," *id.*, bearing in mind that "all credible evidence which is consistent with guilt must be accepted as true, and the State is given the benefit of all favorable inferences that may be reasonably drawn from the evidence." *Id.* (internal quotation mark omitted). We "will reverse and render only if the facts and inferences point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty." *Johnson v. State*, 224 So. 3d 66, 68 (¶4) (Miss. 2016) (internal quotation mark omitted). In short, "[t]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Shelton v. State*, 214 So. 3d 250, 256 (¶29) (Miss. 2017) (internal quotation marks omitted).

¶16.    "[T]o support a conviction for possession of a controlled substance, there must be sufficient facts to warrant a finding that the defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it." *Sills v. State*, 359 So. 3d 603, 610 (¶34) (Miss. 2023) (internal quotation marks omitted). "With constructive possession, the drug is simply found near the defendant's person in a place over which the defendant exercises dominion and control." *Id.* (internal quotation

marks omitted). "Thus, with constructive possession, the State has to prove the defendant was aware of the drug and intentionally, *but not necessarily physically*, in possession of it." *Id.* (internal quotation marks omitted). "The defendant's proximity to the drugs is a factor in establishing constructive possession, but it is not determinative." *Knight v. State*, 72 So. 3d 1056, 1063 (¶26) (Miss. 2011). Here, there is no evidence that McLaurin owned the truck in which the drugs were found. As such, "[w]hen illegal substances are found on premises not owned by the defendant, the State must show other incriminating circumstances, in addition to proximity, in order to prove constructive possession." *Lavant v. State*, 281 So. 3d 48, 54 (¶19) (Miss. Ct. App. 2019) (quoting *Fontenot v. State*, 110 So. 3d 800, 804 (¶9) (Miss. Ct. App. 2012)).

¶17. Citing *Fultz v. State*, 573 So. 2d 689 (Miss. 1990), McLaurin asserts that the State failed to show "additional incriminating circumstances" to justify a finding of constructive possession in this case. In *Fultz*, the defendant, driving alone, was stopped for a traffic violation. *Id.* at 689. He did not own the car he was driving. *Id.* at 690. In the course of searching the defendant's vehicle, a large quantity of marijuana was found in a duffel bag in the trunk of the car. *Id.* The supreme court found that it "cannot be seriously disputed" that Fultz had "dominion and control" over the marijuana. *Id.* However, because "the only additional incriminating circumstance" in that case was that Fultz had a small amount of marijuana on his person at the time of his arrest, the supreme court found the State did not present sufficient evidence to prove constructive possession. *Id.* at 691.

¶18. Similarly, in *Ferrell*, the defendant, like McLaurin, was the sole occupant of the car

7

he was driving, *Ferrell v. State*, 649 So. 2d 831, 832 (Miss. 1995), but did not own the vehicle. *Id.* at 834. Crack cocaine was found in a matchbox "between the two front seats" of the car. *Id.* at 832-33. On these facts and despite the fact that Ferrell did not own the vehicle, the supreme court found that "[a]s the operator of the car, [the defendant] had dominion and control over the contraband discovered in the car." *Id.* at 835. Finding that no other proof of other "incriminating circumstances" had been presented, however, the supreme court found that Ferrell did not constructively possess the crack cocaine. *Id.*

¶19. Unlike the circumstances in *Fultz* or *Ferrell*, we find that here, the State presented sufficient evidence that McLaurin had "dominion and control" over the methamphetamine *and* proved "additional incriminating circumstances" connecting him to the methamphetamine.

¶20. In particular, although it was evening, Officer Townsend was able to identify McLaurin as McLaurin exited the truck—the patrol car's headlights and takedown lights were on, and the area where McLaurin stopped was well lit. Officer Townsend also confirmed that McLaurin was the sole occupant of the vehicle. When Officer Townsend conducted an inventory of the truck, he found the methamphetamine in the center console within arm's reach of the driver's seat. Under these circumstances, we find that a rational trier of fact could find that McLaurin "had dominion and control" over the methamphetamine discovered in the center console of the truck, despite the fact that he did not own the truck.

¶21. We also find that in this case, the State presented evidence of additional incriminating circumstances sufficient to prove McLaurin constructively possessed the methamphetamine.

8

Officer Townsend also found a brown leather bag containing McLaurin's driver's license, titles, and credit cards in McLaurin's name on the floorboard behind the driver's seat of the truck. In *Reid*, for example, we found that in a case involving a jail where "inmates were assigned a cell block but not a specific bed," *Reid v. State*, 322 So. 3d 468, 470 (¶2) (Miss. Ct. App. 2021) (internal quotation mark omitted), evidence of an inmate's "personal belongings in the jail cell where the [contraband items] were found," *id.* at 472 (¶12), constituted evidence that the inmate "possessed" the contraband in question. *Id.*

¶22.  Further, Officer Townsend testified that McLaurin failed to stop when Officer Townsend activated his blue lights. Officer Townsend followed the truck until the McLaurin was forced to stop at a dead end in the road. McLaurin then fled the scene. Officer Townsend testified that he pursued McLaurin for a quarter- to a half-mile. McLaurin failed to stop even though Officer Townsend commanded him to do so. In *Burgess v. State*, 178 So. 3d 1266 (Miss. 2015), the supreme court recognized that "[f]light is a circumstance from which an inference of guilt may be drawn and considered along with all the other facts and circumstances connected to the case." *Id.* at 1278 (¶36).  Here, the jury could have inferred that McLaurin failed to initially stop and then fled to avoid arrest and prosecution for possession of the methamphetamine. *See Gardner v. State*, 412 So. 3d 486, 499 (¶32) (Miss. Ct. App. 2024) (finding that the defendant's flight, coupled with identification testimony at trial, "provide[d] sufficient evidence for a rational juror to find that [the defendant] constructively possessed the cocaine" found in a vehicle occupied by the defendant, who was driving, and a passenger), *cert. granted*, 416 So. 3d 100 (Miss. 2025).

¶23. McLaurin points out that there was no fingerprint evidence, body camera footage, or testimony from any witnesses other than Officer Townsend that McLaurin fled from the scene. According to McLaurin, this lack of evidence, coupled with his brother's alibi testimony and testimony about the purported animosity between Officer Townsend and McLaurin, demonstrates that the proof of constructive possession in this case could not be sufficient.

¶24. But the jury also heard Officer Ellis's testimony explaining that no fingerprints were taken because "we rarely ever have success" with taking fingerprints, and Officer Townsend testified that he simply had no time to start his body-camera because McLaurin immediately fled the scene before Officer Townsend even got out of his patrol car, and then the pursuit ensued. As for any purported bad feelings between McLaurin and Officer Townsend, Officer Townsend testified that to his knowledge, his wife never had a dating relationship with McLaurin, and he had not had any other dealings with McLaurin outside of work, other than the incident in which he believed McLaurin was trying to bribe him.

¶25. If anything, we find that McLaurin's assertions regarding these circumstances go more to a weight-of-the-evidence argument. "It is the province of the jury to decide the weight and credibility to be assigned to the testimony of each witness." *Lavant*, 281 So. 3d at 55 (¶21) (internal quotation marks omitted). This Court "[does] not make independent resolutions of conflicting evidence. Nor do we reweigh the evidence or make witness-credibility determinations. Instead, when the evidence is conflicting, the jury will be the sole judge of the credibility of witnesses and the weight and worth of their testimony." *Little v. State*, 233

So. 3d 288, 292 (¶20) (Miss. 2017) (citation and internal quotation mark omitted); *Reeves v. State*, 825 So. 2d 77, 80 (¶8) (Miss. Ct. App. 2002) ("This Court does not have the task of re-weighing the facts in each case to, in effect, go behind the jury to detect whether the testimony and evidence they chose to believe was or was not the most credible."). Indeed, we cannot do so. As such, we find McLaurin's assertions on this point unconvincing.

¶26. For all these reasons, we find that the State presented sufficient proof that McLaurin constructively possessed the methamphetamine found in the center console of the truck.[7]

### B. Overwhelming Weight of the Evidence

¶27. Alternatively, McLaurin asserts that "because the State never proved that McLaurin ever possessed the methamphetamine found in the center console of the vehicle," his conviction is contrary to the weight of the evidence and resulted in an unconscionable injustice. "When reviewing a challenge to the weight of the evidence, this Court considers the evidence in the light most favorable to the verdict, and the State receives all favorable inferences that reasonably may be drawn from the evidence." *Young v. State*, 236 So. 3d 49, 55 (¶22) (Miss. 2017). This Court "will not order a new trial unless it is convinced that the verdict so contradicts the overwhelming weight of the evidence that to allow the verdict to stand would sanction an unconscionable injustice." *Id.*

¶28. We have already determined that the State presented sufficient evidence to sustain

---

[7] McLaurin also asserts that because the truck was rented by his wife Candice, there was insufficient evidence that McLaurin constructively possessed the methamphetamine. We find that this argument is unpersuasive not only for the reasons discussed above, but also because "[p]ossession of a controlled substance may be . . . individual or joint." *Dixon v. State*, 953 So. 2d 1108, 1112 (¶9) (Miss. 2007).

McLaurin's conviction. We have also pointed out that several of the points McLaurin makes with respect to his sufficiency-of-the-evidence argument are essentially weight-of-the-evidence assertions. McLaurin suggests that this Court may "sit[] as a hypothetical thirteenth juror," and may "grant a new trial" should we disagree with the jury's verdict, quoting *Lamar v. State*, 983 So. 2d 364, 367 (¶5) (Miss. Ct. App. 2008) (quoting *Bush v. State*, 895 So. 2d 836, 844 (¶18) (Miss. 2005)). In 2017, however, the supreme court did away with the "thirteenth juror" concept, declaring, "To be clear, when reviewing a motion for new trial, neither this Court nor the Court of Appeals 'sits as thirteenth juror.'" *Little*, 233 So. 3d at 292 (¶20) (quoting *Bush*, 895 So. 2d at 844 (¶18)). As stated above, we do "[not] reweigh the evidence" or "make independent resolutions of conflicting evidence"—that is the sole province of the jury. *Little*, 233 So. 3d at 292 (¶20). Accordingly, for the reasons we have already discussed, we find that the jury's verdict is not against the overwhelming weight of the evidence, nor does affirming it sanction an unconscionable justice.

## II. Officer Brad Ellis's Testimony

¶29. McLaurin asserts that the trial court abused its discretion in admitting hearsay testimony from Officer Ellis concerning the truck's registration and rental status or, alternatively, that McLaurin's trial counsel was ineffective for failing to timely object to Officer Ellis's testimony. For the reasons we address below, we find no plain error in the admission of Officer Ellis's testimony. We further find that the record is adequate to address McLaurin's ineffective-assistance-of-counsel claim on the merits, and we find that McLaurin failed to prove that claim.

### A.    Hearsay Testimony

¶30.    Before Officer Ellis was called as a witness, McLaurin's counsel objected to him testifying at all because he had no personal knowledge of the case.   In support of this objection, defense counsel argued, "From my understanding with speaking with Mr. Ellis, he only knows about what he was told from Candice McLaurin, which is actually the wife of Mr. McLaurin, which we're invoking spousal privilege.   And he had conversations about . . . some allegedly false receipt that was made by a Brooke Crane."

¶31.    The trial court denied the objection as premature, and specifically reminded counsel that he could object if he believed improper testimony was being sought, as follows:

> Well, I don't even know if they are going to call [Officer Ellis]. If they do, I don't know what they are going to ask him. *So if they ask him something that's not allowed by the rules, such as hearsay, make an objection, and I'll rule on it.* But you're a little premature.

(Emphasis added).

¶32.    The State called Officer Ellis as a witness, and during his direct examination, Officer Ellis testified about the truck registration and what he learned from Candice McLaurin, as follows:

| THE STATE: | Were you able to determine who the vehicle was registered to? |
|---|---|
| [OFFICER ELLIS]: | . . . When we run the registration on it, it came back as a rental vehicle. |
| THE STATE: | Okay. And were you able to tell who had rented it? |
| [OFFICER ELLIS]: | We later found out that Candice McLaurin had rented it. |

13

THE STATE:          Who is that?

[OFFICER
ELLIS]:               Moses McLaurin's wife.

¶33.   Defense counsel *also* asked Officer Ellis about the vehicle-registration information. During Officer Ellis's cross-examination, defense counsel asked, "Didn't you tell me you didn't know who the vehicle was registered to?"  Officer Ellis responded, "At the time whenever we spoke, I didn't—I spoke to Candice McLaurin a little bit ago and she said that she thinks that—she was the one that rented it."

¶34.   Defense counsel made no contemporaneous objection to Officer Ellis's testimony about the vehicle rental or registration—even though the trial judge explicitly told counsel that he could object to Officer Ellis's testimony "if [the State] ask[s] [Officer Ellis] something that's not allowed by the rules, such as hearsay."  Although defense counsel generally objected to the State calling Officer Ellis as a witness before he took the stand, defense counsel did not object to this testimony when offered, nor did he move to strike it. "[We] cannot find that a trial judge committed reversible error on a matter not brought before him or her to consider." *Smith v. State*, 986 So. 2d 290, 295 (¶13) (Miss. 2008).  In short, because McLaurin failed to preserve this issue for appeal, it is procedurally barred. *Id.*; *Ellzey v. State*, 412 So. 3d 358, 374 (¶32) (Miss. Ct. App. 2024) (stating "the failure to make a contemporaneous [hearsay] objection at trial waives the issue"), *cert. denied*, 413 So. 3d 586 (Miss. 2025).

¶35.   "Our state's precedent is clear that a defendant who does not make a contemporaneous objection at trial must rely on plain error to raise the assignment on appeal." *Jones v. State*,

14

411 So. 3d 265, 273 (¶21) (Miss. Ct. App. 2025) (internal quotation mark omitted). The State suggests that because McLaurin does not specifically ask this Court to review this issue for "plain error," we should decline to review his assertions on this basis. McLaurin, however, does generally assert that because his wife was not called as a witness so that he could cross-examine her, Officer Ellis's testimony about the truck registration violated his "fundamental right under the Sixth Amendment and should have been excluded." McLaurin further asserts that he was "severely prejudiced" by this statement because it "further connected him to the vehicle in a more tangible way." As such, we review this issue for plain error.

¶36. In undergoing our plain-error analysis, we recognize that "only an error so fundamental that it creates a miscarriage of justice rises to the level of plain error." *Dewberry v. State*, 407 So. 3d 269, 278 (¶37) (Miss. Ct. App. 2025). Thus, "[p]lain-error review is properly utilized for correcting *obvious* instances of injustice or misapplied law." *Green v. State*, 183 So. 3d 28, 31 (¶6) (Miss. 2016) (internal quotation marks omitted). For this Court to "determine if plain error has occurred, we must determine if the trial court has deviated from a legal rule, whether that error is plain, clear, or obvious, *and* whether the error has prejudiced the outcome of the trial." *Id.* (emphasis added). In making this determination, we consider the totality of the circumstances. *Muise v. State*, 997 So. 2d 248, 254 (¶19) (Miss. Ct. App. 2008) (finding no plain error and stating, "[c]onsidering the totality of the circumstances, there was no error so fundamental that it generates a miscarriage of justice").

¶37. Here, Officer Ellis's testimony about Candice telling him that she rented the truck was

15

hearsay. However, we find that the jury's hearing this testimony was harmless error and did not rise to plain error. That is, we find that no prejudice resulted so as to create an "obvious instance[] of injustice" in this case. As we addressed above, Officer Townsend was able to identify McLaurin as he fled the truck and failed to stop even after Officer Townsend commanded him to do so. Further, McLaurin was the sole occupant of the truck, the drugs were found in the center console of the truck, and McLaurin's driver's license, titles, and credit cards in his name were found inside the truck. Thus, regardless of who owned or rented the truck, the State presented sufficient evidence that McLaurin constructively possessed the methamphetamine and his conviction is not against the overwhelming weight of the evidence. *See, e.g.*, *Stevenson v. State*, 320 So. 3d 1225, 1230 (¶19) (Miss. 2021) (explaining under a plain-error analysis that "[p]rejudice often is lacking when the weight of the evidence against a defendant is overwhelming").

¶38.    Nevertheless, McLaurin asserts that it was prejudicial for the jury to hear that his wife rented the truck—yet McLaurin *himself* relies on this fact in asserting that there was insufficient evidence to prove constructive possession because a juror could "just as reasonably [found] that the renter, Candice McLaurin, could have possessed the methamphetamine instead [of McLaurin]."[8] Accordingly, considering the totality of the circumstances, we find no plain error in the admission of Officer Ellis's testimony in this case.

### B.    Ineffective Assistance of Counsel

---

[8] As noted, we find this argument unavailing because a controlled substance may be "possess[ed]" individually or jointly. *Dixon*, 953 So. 2d at 1112 (¶9).

¶39. McLaurin alternatively asserts that he received ineffective assistance of counsel when his lawyer failed to object to Officer Ellis's testimony. "Whether a defendant has received ineffective assistance of counsel is a question of law reviewed de novo under two prongs: '[f]irst, the defendant must show that counsel's performance was deficient . . . . Second, the defendant must show that the deficient performance prejudiced the defense.'" *Taylor v. State*, 167 So. 3d 1143, 1146 (¶5) (Miss. 2015) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). We examine the totality of the circumstances in assessing both of these factors, bearing "in mind that a strong but rebuttable presumption exists that a counsel's conduct falls within the wide range of reasonable professional assistance." *Williams v. State*, 228 So. 3d 949, 952 (¶13) (Miss. Ct. App. 2017) (internal quotation mark omitted).

¶40. Typically, ineffective-assistance-of-counsel claims should be raised in a motion for post-conviction collateral relief "because there is usually insufficient evidence within the record to evaluate the claim." *Blocton v. State*, 340 So. 3d 384, 393 (¶35) (Miss. Ct. App. 2022). "We may address such claims on direct appeal only if the issues are based on facts fully apparent from the record." *Id.* Thus, we will not address an ineffective-assistance-of-counsel claim on direct appeal unless "the record affirmatively shows ineffectiveness of constitutional dimensions, or . . . the parties stipulate that the record is adequate and the Court determines that findings of fact by a trial judge able to consider the demeanor of witnesses, etc., are not needed." *Robinson v. State*, 400 So. 3d 527, 531 (¶14) (Miss. Ct. App. 2025). "[We] may also resolve ineffective-assistance-of-counsel claims on direct appeal when the record affirmatively shows that the claims are without merit." *Id.*

17

(internal quotation mark omitted).

¶41. In this case, McLaurin asserts that his lawyer was ineffective because he failed to object to Officer Ellis's specific testimony about the truck registration and exacerbated this mistake by cross-examining Officer Ellis on this same issue. Because we find the record affirmatively shows that McLaurin's claim is without merit, we address this issue on direct appeal.

¶42. With respect to McLaurin's "deficient performance" assertions, we point out that generally, "counsel's choice of whether or not to . . . make certain objections fall[s] within the ambit of trial strategy and cannot give rise to an ineffective assistance of counsel claim." *Carr v. State*, 873 So. 2d 991, 1003 (¶27) (Miss. 2004) (internal quotation mark omitted). "There is a strong presumption that counsel's actions were consistent with a chosen trial strategy and [that these actions were] within the wide range of reasonable professional assistance." *Robinson*, 400 So. 3d at 532 (¶18).

¶43. Here, however, as addressed above, defense counsel failed to object to Officer Ellis's truck-registration testimony even after the trial judge denied counsel's initial objection as premature, but the judge specifically told counsel that "if [the State] ask[s] [Officer Ellis] something that's not allowed by the rules, such as hearsay, make an objection, and I'll rule on it." Defense counsel also failed to request that Officer Ellis's testimony be stricken from the record and then compounded his error when he asked Officer Ellis about the truck registration during his cross-examination.

¶44. After Officer Ellis testified, outside the presence of the jury, defense counsel

18

ostensibly sought to object to the truck registration testimony, as follows:

| [DEFENSE COUNSEL]: | Your Honor, I have one other small motion. |
| THE COURT: | Go ahead. |
| [DEFENSE COUNSEL]: | [Officer Ellis] made a statement concerning a registration of a vehicle being registered to Candice McLaurin, which he offered facts that shouldn't have been admitted in the presence of a jury. . . . He testified to some hearsay information about a registration when the Defense tried to prevent that testimony from happening. |
| THE COURT: | That's right he did testify to that. *And if you had made a timely objection, I would have likely sustained it. . . . [When] the State asked [Officer Ellis] about the rental and if [he] found out who rented it, . . . you did not object. And, therefore, there was no objection for me to rule on.* So if you're making a motion now for whatever, it's overruled. |

(Emphasis added). Thus, the trial judge told defense counsel that *had* he objected to Officer Ellis's truck registration testimony, "I would have likely sustained it." Even after this interaction, defense counsel did not seek a limiting instruction.

¶45. Upon our de novo review and in viewing the totality of the circumstances, we find that trial counsel's performance with respect to this particular issue could arguably constitute deficient performance.

¶46. But even if his trial counsel's actions were deficient, McLaurin must also prove the second prong of the *Strickland* test—that any deficient performance "prejudiced the defense of [McLaurin's] case." *Ross v. State*, 954 So. 2d 968, 1003 (¶78) (Miss. 2007). In this regard, "[o]nly where it is reasonably probable that, but for the attorney's errors, the outcome

19

would have been different, will we find that counsel's performance was deficient." *Dartez v. State*, 177 So. 3d 420, 423 (¶19) (Miss. 2015). For the same reasons we discussed above in finding that McLaurin failed to prove "prejudice" in our plain error analysis, we likewise find that McLaurin has failed to prove "prejudice" in the context of his ineffectiveness-assistance-of-counsel claim. That is, McLaurin did not prove "that, but for [his] attorney's errors, the outcome [of his trial] would have been different" in this case. Rather, no matter who owned the truck, the jury heard evidence that McLaurin was the sole occupant and driver of the truck; his personal belongings were inside the truck; and McLaurin failed to stop when Officer Townsend initiated the stop and then fled the scene after he reached a dead end and had to stop his vehicle. In short, these facts support the jury's verdict regardless of whether McLaurin owned the vehicle. Accordingly, we are unpersuaded by McLaurin's ineffective-assistance-of-counsel claim.

### III. Testimony Concerning the Brown Leather Bag

¶47. McLaurin asserts that he is entitled to a new trial because the trial court impermissibly limited his theory of defense when it excluded testimony offered "[t]o support [McLaurin's] defense that he was not in possession of the [brown leather] bag found in the vehicle where the methamphetamine was and therefore was not present in the vehicle at the time of the crime." For the reasons stated, we find that the trial court properly excluded the proposed testimony as hearsay, and a new trial was not warranted.

¶48. This issue concerns proposed testimony from Tracy Cannon and McLaurin's brother, Josh. We first address the trial court's ruling excluding Cannon's testimony. During the

20

relevant time period, Cannon was a Scott County Sheriff's Department employee. The defense "sought to call . . . Cannon . . . to present a document showing that McLaurin had reported the [brown leather] bag stolen on October 20th through her testimony." As detailed below, in the course of arguing this motion, defense counsel decided not to offer the report[9] into evidence but still wanted to present Cannon's testimony on the issue. After a lengthy argument concerning the admissibility of Cannon's testimony, The trial court excluded Cannon's testimony as hearsay.

¶49.    "The standard of review for the admission or exclusion of hearsay evidence is abuse of discretion." *Graham v. State*, 264 So. 3d 819, 821 (¶5) (Miss. Ct. App. 2018). "Hearsay is an out-of-court statement offered to prove the truth of the matter asserted." *Washington v. State*, 373 So. 3d 1051, 1055 (¶17) (Miss. Ct. App. 2023) (quoting *Crist v. Loyacono*, 65 So. 3d 837, 844 (¶21) (Miss. 2011)). "So for an out-of-court statement to be admissible, it must either be offered for some other proper purpose, or fall into one of the enumerated exceptions to the general hearsay rule." *Id.*  As discussed below, we find that the trial court did not abuse its discretion in excluding Cannon's testimony on hearsay grounds.

¶50.    Our review of the trial transcript shows that defense counsel repeatedly sought to offer Cannon's testimony about the *content* of the statement, i.e., that McLaurin reported his brown leather bag was stolen—information that plainly falls within the definition of hearsay. For example, the trial court asked defense counsel, "[W]hat purpose . . . [what] [i]s . . . your

---

[9] The trial court allowed defense counsel to have the report "marked for identification, that way it will be part of the record."  The report, however, was never marked for identification and therefore is not in the record.

intention to do with this witness?"  Defense counsel responded, as follows:

> My intentions is not to offer this for the truth of the matter asserted but to offer it as a fact that Mr. McLaurin did come in on this particular date and write a statement saying that an item had been taken from him.  And that he did come in and make that statement and that this is her seal.

In response to a similar question from the court, defense counsel likewise responded, "We're asking her the question as whether or not he came in on October of this date . . . to give a statement. And did he g[i]ve her a statement concerning a bag."

¶51.   McLaurin asserts that defense counsel ultimately offered Cannon's testimony "not . . . for its truth that items were in fact stolen, but instead to show that McLaurin came and made a statement to her and that she would recognize her own notary seal."  But the portion of the transcript that McLaurin cites to support this assertion does not actually support it.  On the contrary, when the trial court again asked defense counsel to explain the purpose of offering Cannon's testimony, defense counsel stated, "We're offering [Cannon's testimony] to show that Mr. McLaurin came before her on this date and made out a statement that's saying *that this item was taken away from her* [sic]. Now, she recognizes this seal." (Emphasis added).

¶52.   As the State then pointed out, "That the items were taken is the matter asserted. That's what we're arguing." The trial court agreed, pointing out that "You're [(the defense is)] offering that statement to show that Mr. McLaurin told [Cannon] that these items were stolen from [him] before December 4th. That's the matter that's asserted in there."

¶53.   Indeed, defense counsel's final summary describing the intended purpose of Cannon's testimony *again* shows that the defense intended to ask her about the *content* of McLaurin's

22

statement. Defense counsel told the trial court, "I want to ask [Cannon] whether or not—not even mentioning the statement—whether or not she recalls having a conversation with Mr. McLaurin, whether or not he came in and mentioned anything about anything being stolen." Under these circumstances, we find no abuse of discretion in the trial court's ruling excluding Cannon's because it was hearsay.

¶54. McLaurin also challenges the trial court's ruling sustaining the State's objection to testimony from "McLaurin's alibi witness [(McLaurin's brother Josh)] to state whether he had knowledge of a personal report or affidavit filed by McLaurin concerning the stolen bag." We find no abuse of discretion in that ruling, either. Like Cannon's testimony, any testimony on Josh's part about the purportedly stolen bag would have been hearsay.

¶55. For the above-stated reasons, we find that this assignment of error is without merit.

### IV. Sentencing Under Mississippi Code Annotated Section 41-29-147

¶56. Section 41-29-147 provides, in relevant part, that "any person convicted of a second or subsequent offense under this article *may* be imprisoned for a term up to twice the term otherwise authorized." Miss. Code Ann. § 41-29-147 (emphasis added). By the plain terms of this statute, sentence enhancement pursuant to section 41-29-147 is discretionary. McLaurin asserts that the trial court erred when it doubled McLaurin's maximum eight-year sentence based on its apparent belief that it had no discretion in sentencing him under section 41-29-147. For the reasons stated, we agree with McLaurin and remand for resentencing as we further detail below.

¶57. At the sentencing hearing in this case, the trial judge noted that McLaurin's possession

23

conviction would normally "provide for an eight[-]year sentence." He then stated that "Mr. McLaurin was also indicted as a second drug offender under [section] 41-29-147, *which, in effect, doubles* [*the*] *sentence to a period of* [*sixteen*] *years*. It's my finding the State has met its burden of proof and that Mr. McLaurin is a second offender under that statute." (Emphasis added). Based on this statement, McLaurin asserts that the trial judge erroneously believed that he lacked discretion under 41-29-147 and was required to imposed a sixteen-year sentence.

¶58.    In further support of this argument, McLaurin notes that the trial judge's mistaken belief that he lacked discretion under section 41-29-147 is highlighted by his *specific* reference to his discretion under the habitual offender statute, section 99-19-81, as follows: "I believe that the Habitual Offender Statute does provide some out [for] the sentencing judge to not sentence a person to the full maximum sentence if he can find justification for doing so."

¶59.    We find that McLaurin's argument on this issue is supported by the supreme court's analysis in *Wells v. State*, 160 So. 3d 1136, 1146 (¶30) (Miss. 2015), *overruled on other grounds by Rowsey v. State*, 188 So. 3d 486, 494 (¶¶21-22) (Miss. 2015). In *Wells*, the trial court doubled the defendant's sentence pursuant to section 41-29-147, stating on the record "that the Court must enhance the penalty from that of the specified penalty under the statute, which is 30 years, and that it *must be enhanced to double the penalty*, which means 60 years." *Id.* (quoting the trial court's ruling with emphasis added by the supreme court).

¶60.    The supreme court remanded for resentencing based on the trial court's statement,

24

finding that "[b]y this statement, . . . the trial court believed it had no choice but to double [the defendant's] sentence as a subsequent drug offender. This was error." *Id.* In its analysis, the supreme court pointed out that "[s]ection 41-29-147 says that 'any person convicted of a second or subsequent offense under this article *may be imprisoned* for a term up to twice the term otherwise authorized . . . .'" *Id.* (emphasis added by the supreme court) (quoting Miss. Code Ann. § 41-29-147). "Accordingly, trial judges have complete discretion whether and how much to enhance a defendant's sentence as a subsequent drug offender under [s]ection 41-29-47." *Id.* The supreme court, therefore, remanded "for resentencing, so the trial judge can determine, in his discretion, whether to enhance [the defendant's] sentence as a subsequent drug offender, or not." *Id.*

¶61. McLaurin asserts that in light of the trial judge's statement in this case, the same reasoning in *Wells* applies here. We agree. Both the plain language of section 41-29-147 and the supreme court's analysis in *Wells* require that we likewise remand for resentencing in this case. Like the trial judge in *Wells*, we find that the trial judge's statements on the record here show that he mistakenly believed that he did not have discretion in determining whether McLaurin's eight-year sentence should be doubled or enhanced for a shorter period pursuant to section 41-29-147. In conformance with supreme court precedent, we therefore reverse in part to vacate McLaurin's sentence and remand for resentencing so the trial judge can determine, in his discretion, whether to change McLaurin's sentence and, if so, by what length of time.

## V. Defendant's Absence During the Qualifying Stage of Jury Selection

25

¶62. McLaurin asserts, pro se, that the trial court erred when it qualified the venire and excused three jurors when neither McLaurin nor his lawyer was present. Because McLaurin had "no guaranteed right to be present" during this general qualification process, *see Davis v. State*, 767 So. 2d 986, 991-92 (¶¶8-12) (Miss. 2000), we find that McLaurin's pro se assignment of error is without merit.

¶63. The record reflects that the defense was not present during the general prospective juror qualification stage when three jurors had been excused. Prior to voir dire, defense counsel simply asked the trial judge, in chambers, why the jurors were excused, as follows:

> THE COURT: Mr. Carr, you said you had something before we go out.
>
> [DEFENSE COUNSEL]: Yes. I'll be extremely brief. It's concerning the three jurors that were excused during the qualified stage. I don't have a record of why they were excused. And I just wanted to see why they were excused or whether not the Court could inform us of that reason.

The trial judge explained,

> [Regarding] the jurors, we called in panels 1, 2, 3, and 4 this morning. The clerk just told me that some people are absent for no reason. But also there were some that I had previously excused. I don't know the exact reason they were excused. Generally speaking, when I impaneled the jury a couple of weeks ago, someone that is on the jury but excused for today had some kind of conflict today.
>
> Maybe they had a doctor's appointment, maybe they had school just let out and people are going on vacations. Maybe they are on a trip this week. Something like that is the general reason that they would have been excused.

Defense counsel responded, "Okay. We have nothing further, your Honor."

¶64. We find no error occurred here. Indeed, defense counsel voiced no objection after

26

hearing the trial court's explanation. This makes sense because in *Davis*, the supreme court made it clear that a defendant's right to be present "during the critical stages of his trial" does not encompass the right to be present for the general qualification process, as McLaurin asserts in his pro se brief. *Davis*, 767 So. 2d at 992 (¶10). In particular, the supreme court announced:

> Today we adopt a bright line rule that the trial judge's general questioning of prospective jurors, to ascertain those who are qualified for, or exempt from, jury service *is not a critical stage of the criminal proceedings during which a criminal defendant is guaranteed a right to be present.* Such statutory matters as whether a prospective juror is a resident of the county, is ill or has an illness in the family, or is over 65 years of age are not matters which necessitate a defendant's presence. A defendant may choose to be present during this part of the proceedings, *but has no guaranteed right to be present.*
>
> . . . .
>
> Davis's right to be present during the critical stages of his trial has not been violated due to his absence, and the partial absence of his attorney, during the qualifying of the prospective jurors. This issue is without merit.

*Id.* at (¶¶10, 12) (emphasis added); *see also Leffingwell v. State*, 747 So. 2d 879, 881 (¶¶18-19) (Miss. Ct. App. 1999) (recognizing that defendant "has the right under the Sixth Amendment to be present in the courtroom only at critical stages of the trial" and that defendant's absence during the general juror qualification process did not violate this right).

¶65. As a point of comparison, the supreme court in *Davis* further explained that

> [r]egardless of whether it is called "impaneling the jury" or "voir dire" or otherwise, *the critical stage of jury selection begins at the time when the trial judge and counsel for the parties begin questioning the qualified prospective jurors about such matters as whether they know or are related to the defendant or the attorneys, know or have read about the case, and any other matters specific to the particular case.*

27

*Davis*, 767 So. 2d at 992 (¶11) (emphasis added).

¶66. As in *Davis*, McLaurin and his counsel were present during the critical voir dire stage of jury selection. As *Davis* teaches, their absence during the general qualification process did not violate McLaurin's "right to be present during the critical stages of his trial." *Id.* at (¶¶10, 12). Accordingly, we find that this assignment of error is without merit.

### VI.    Spousal Privilege

¶67. McLaurin asserts, pro se, that the trial court erred when it allowed Officer Ellis's testimony that Candice rented the truck because that testimony "violated spousal privileges." We find that this assignment of error is both procedurally barred and without merit.

¶68. As we have addressed above, McLaurin's trial counsel did not make any contemporaneous objection to Officer Ellis's testimony about the truck rental. McLaurin thus failed to preserve this issue for appeal, and his spousal privilege argument is procedurally barred. *See Scarbough v. State*, 893 So. 2d 265, 272 (¶23) (Miss. Ct. App. 2004) (declining to address defendant's assertion that the trial court erred when it allowed certain witnesses to testify about privileged statements made by his wife when no contemporaneous objection had been made to the purportedly objectionable statements).

¶69. In any event, McLaurin's spousal privilege argument fails on the merits, too. Mississippi Rule of Evidence 504(b) delineates a "General Rule of Privilege," as follows: "A person has a privilege to prevent the person's current or former spouse from testifying in a civil or criminal case about any confidential communication between them." MRE 504(b). A communication is "confidential," however, only "if a person makes it privately

to the person's spouse and does not intend its disclosure to any other person." MRE 504(a). Here, Candice voluntarily told Officer Ellis that she rented the truck. There is no indication in the record that this information was a confidential communication between McLaurin and Candice that she later conveyed to Officer Ellis. As such, we are unconvinced by McLaurin's assertion that the truck rental information was protected by the spousal privilege.

## VII. McLaurin's Pro Se Claims Based on Alleged Facts Outside the Record

¶70. McLaurin also raises other issues, pro se, including an alleged *Brady* violation, *see Brady v. Maryland*, 373 U.S. 83, 87 (1963), ineffective assistance of counsel on grounds other than those discussed above, a discovery violation, witness perjury, and a due process violation. Upon review, however, these issues are based on a factual allegation that does not appear in the record. That is, for the first time, McLaurin asserts on appeal that at the same time as the traffic stop involving the white F-150 truck that led to his arrest, McLaurin's wife had reported that truck stolen.

¶71. There is no proof of this assertion in the record. "[U]nsupported factual assertions in appellate briefs are not evidence and will not be used as grounds for reversing the trial court's judgment." *Keller v. State*, 330 So. 3d 788, 791 (¶5) (Miss. Ct. App. 2021) (internal quotation mark omitted); *see* M.R.A.P. 28(a)(7) (requiring that the appellant's "argument shall contain the contentions of appellant with respect to the issues presented, and the reasons for those contentions, with citations to the authorities, statutes, *and parts of the record relied on*" (emphasis added)).

¶72. Further, until this appeal, McLaurin did not raise this alleged fact at any time during

trial or after trial or raise any claim relating to this fact before the trial court. Accordingly, we do not address these issues on appeal. *See, e.g.*, *Corrothers v. State*, 148 So. 3d 278, 342-43 (¶189) (Miss. 2014) (Randolph, P.J., specially concurring) ("A trial judge cannot be held in error for matters not presented to him or her.").

## CONCLUSION

¶73.    For the above-stated reasons, we affirm McLaurin's conviction. We reverse in part to vacate McLaurin's sentence under section 41-29-147 and remand the case to the Scott County Circuit Court for resentencing consistent with this opinion.

¶74.    **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**BARNES, C.J., WESTBROOKS, LAWRENCE, McCARTY AND LASSITTER ST. PÉ, JJ., CONCUR. WILSON, P.J., McDONALD, EMFINGER AND WEDDLE, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**